Stephenson, J.
 

 There is but one question before us, namely, did the Court of Appeals err in reversing the Court of Common Pleas for error in its general charge to the jury on the question of intent?
 

 We have no common-law crimes in Ohio, neither is there common-law criminal procedure in Ohio. We do, however, recur to the common law at times to get whatever light it may give on the construction of criminal statutes.
 

 The common law distinction between offenses
 
 mala in se
 
 and
 
 mala prohibita
 
 helps us none in this case. If the statute defining an offense in Ohio provides that it must be committed with a particular intent, then such intent bócomes á material element of the offense and it must be alleged in the indictment and proved on trial.
 

 If the statute defining an offense is silent on the element of intent, then it is not necessary to allege and prove an intent to commit the offense.
 

 Stripping’ it of its inapplicable verbiage, Section 710-172, G-eneral Code, is as follows: “Whoever being an officer * * * of a bank, embezzles * * * any of the money * * * of such bank, * * * or makes a false entry in a book, * * * with intent to defraud or injure the bank, * * * or to deceive an officer of the bank or an agent appointed to examine the affairs of such bank * * #,” shall be punished as therein provided.
 

 The intent provided for in this section is known as a specific intent. Specific intent in Ohio is no more or
 
 *33
 
 less than a particular intent prescribed by statute. There are two distinct specific intents involved in this statute, viz.: (1) Embezzlement with intent to injure or defraud the bank; (2) making false entries with intent to deceive an officer of the bank or an agent appointed to examine the affairs of such bank.
 

 This conclusion must be reached by a common sense analysis of the statute. If an officer of a bank takes money therefrom to pay an obligation of the bank, no crime is committed, but if he takes it from the bank with intent to convert it to his own use, he is an embezzler. If such officer makes an entry in the books of the bank in the due course of business, evidencing a
 
 bona fide
 
 transaction, he has committed no offense, but if he makes an entry in such books for which there is no foundation in fact and makes it for the purpose of covering and concealing his own defalcation, such entry is a false entry and its natural tendency and apparent purpose are to deceive those upon whom devolves the duty of examining such books.
 

 The Court of Appeal's found that there was sufficient evidence to support the conviction on all the counts contained in the indictment. It further found that there was an irregularity in the sentence. With this error we are not concerned. If that were the only error, the case could have been remanded with instructions to re-sentence.
 

 The Court of Appeals indicated that the trial court could and should have been more specific in its definition of the issues, but no error was predicated thereon.
 

 The head and front of the offending by the trial judge is embraced in the following language:
 

 “It is not always possible to prove a purpose by direct evidence, for purpose and intent are subjective facts. That is, they are within the mind of man, and hence, in determining purpose, you may look to all the surrounding circumstances, including what was said and done in relation thereto; bearing in mind the pre
 
 *34
 
 sumption of law, that every one is presumed to intend the natural and probable consequences of his voluntary acts, unless the circumstances are such as to indicate the absence of such intent. When an unlawful act, however, is proved to be knowingly done, no further proof is needed on the part of the state in the absence of justifying or excusing facts, since the law presumes a criminal intent from an unlawful act knowingly done.”
 

 In its opinion the Court of Appeals stated that there was sufficient evidence to-support the verdict on each and all the counts of the indictment. In so finding the Court of Appeals must necessarily have found:
 

 1. That at the times laid in the indictment, Huffman was assistant cashier of the bank;
 

 2. That he took from the bank the various sums of money set out in the indictment;
 

 3. That he appropriated same to his own use;
 

 4. That he made the entries alleged in the books of the bank;
 

 5. That the entries were false;
 

 6. That the false entries were related to the various defalcations.
 

 In the face of this evidence, was the court’s charge erroneous ?
 

 The Court of Appeals further held that the entire charge of the trial court on the question of .intent was in the abstract except the following:
 

 “When an unlawful act, however, is proved to be knowingly done, no further proof is needed on the part of the state in the absence of justifying or excusing facts, since the law presumes a criminal intent from an unlawful act knowingly done.”
 

 This part of the charge the Court of Appeals held had concrete application to the facts in the case, but also held that it was “palpably wrong.” ,
 

 The Court of Appeals further found and held:
 

 “The Jury may have found Huffman guilty of
 
 *35
 
 knowingly making false entries in the bank ledger, but unless it was found also that the entries were made with the specific intent to defraud or injure the bank, Huffman would not be guilty of the crime so charged. And since the evidence in relation to the charged embezzlement was so associated and interrelated as to be more or less dependent upon the evidence adduced as to the alleged false entries, this obviously erroneous instruction affected not only the alleged crime of having made false entries with the intent to defraud and injure the bank but also the alleged embezzlement of the sums of money with respect to which the false entries were alleged to have been made.
 
 * * *
 

 “As said in
 
 Weitz
 
 v.
 
 State,
 
 48 Ohio App., 421, at page 426: ‘In the case here the intent to defraud was a definite, integral part of the crime alleged in the indictment. It was not a question of general intent. It was a specific intent that must be proved.’
 

 ‘ ‘ Since it must be proved, there can be no argument about the duty of the trial judge to properly charge the jury in accordance with the rule of law as to the correctness of which there is no dispute. The latter part of this instruction is also erroneous in that it shifts the burden of proof from the defendant in error to the plaintiff in error.”
 

 Let it at all times be borne in mind that the trial judge in defining the issues did properly apply the specific intent to the different counts and did instruct the jury in effect that such intent was a material element of the indictment and had to be proved by the state beyond a reasonable doubt before the state could insist upon a conviction.
 

 Whether we like it or not, criminal eases must be reviewed in the light of Section 13449-5, General Code, which amongst other things provides: “* * * nor shall any judgment of conviction be reversed in any court * * * for any misdirection of the jury unless
 
 *36
 
 the accused was or may have been prejudiced thereby”.
 

 Let us not overlook the fact that there are two specific intents involved in this case, viz.: That the false entries were made with
 
 intent to deceive
 
 and the sums were embezzled with
 
 intent to defraud,
 
 and they were associated and interrelated.
 

 False entries could be made in the ledger of a bank from now until doomsday, but unless its assets were diminished under cover of such false entries, the bank would not be defrauded. Entries made in the ledger of a bank for the purpose of revealing a financial condition other than its true financial condition are false entries and they are only made for one purpose, namely, to deceive.
 

 Huffman was assistant cashier of the bank in question and had been such for several years. We do not know how much Huffman knew about the banking business, but we do know that he knew what he was doing when he took the money out of the bank and appropriated it to his own use, as he makes no defense that he is mentally incompetent, a somnambulist or a sufferer from amnesia. When he knowingly took the bank’s money and appropriated it to his own use it is presumed that he intended the natural and probable consequences. Every one, and particularly the assistant cashier of a bank, is charged with the knowledge that taking a bank’s money does it no good, and that is especially true since October 29, 1929. He knew that he was taking something that did not belong to him, was defrauding the bank, reducing its assets and thereby injuring it. He further knew that the bank balanced its cash and that the absence of cash had to be accounted for by the presence of something else in the nature of a cash equivalent, so he resorted to charging certain depositors’ accounts with withdrawals and entering same on the ledger when in truth and in fact such depositors had not made such withdrawals. These en
 
 *37
 
 tries were false, as he knew. Then why did he make them? For just one purpose — to deceive. To deceive whom? To deceive those who had access to the books and funds of the bank, upon whom devolved the duty of seeing to it that the books of the bank revealed its true condition, namely, the officers of the bank and the bank examiner.
 

 Huffman knew when he made these entries-; he knew that their natural and probable consequence was to deceive; and that was what he intended.
 

 After all, was the charge of the trial court erroneous?
 

 Under the set-up in this bank, as developed by the evidence, it was the duty of Huffman to make the entries evidencing withdrawals. The courts are not in harmony on the question of intent involved herein, and there is a reason. We quote some of the text from 8 Ruling Case Law, 62, Section 12, keeping in mind that this text is compiled by taking excerpts from decisions of federal and state courts. This section is headed “Guilty Intent as Element of Statutory Crime.” After recognizing that there are two classes of cases along this line, it reads in part:
 

 “Naturally,'in such an inquiry the decisions have fallen into two classes, because there have been two cardinal considerations of directly opposite tendency influencing the minds of judges; the one being the injustice of punishing unconscious violations of law, and the other the necessity, in view of public utility, of punishing at times some of that very class of offenses. This difference in construction may be seen in the way the courts construe the word ‘knowingly’ when used in statutes which penalize a person who knowingly does something. The word is sometimes construed to be used in the sense of ‘intentionally,’ in which case it must be made to appear that the party charged was aware of the illegality of his conduct. A more general construction is that the word so employed imports a
 
 *38
 
 knowledge of the essential facts from which the law presumes a knowledge of the legal consequences arising therefrom.”
 

 True, this text deals with statutory construction and is cited for the sole purpose of determining whether the use of the word “knowingly” by the trial court in its charge had any warrant of law.
 

 Instructions are formulated in the light of statutory construction.
 

 In the case of
 
 Farrer
 
 v.
 
 State, 2
 
 Ohio St., 54, it was held in substance that when the state had proved the administering of arsenic by the accused, that he knew it was arsenic, and death resulted, a presumption arose, in the absence of any other proof, that he
 
 knew
 
 the deadly character of the drug and intended to kill.
 

 This case stands as law and authorized the trial judge to use the word “knowingly” as he did use it, if the instruction is otherwise correct.
 

 It is a generally accepted proposition of law in Ohio that what a man does wilfully he intends to do. 12 Ohio Jurisprudence, 290, Section 286.
 

 When a person does an act wilfully, he knows it; hence the use of the word “knowingly” cannot be condemned.
 

 We are confronted with the next question, how shall the intent involved herein be proven and what presumptions. obtain, if any?
 

 ‘ ‘ The intent to embezzle may be manifested by various acts, such as
 
 making false entries,
 
 denial of receipts of money, not accounting when it should be done, rendering false accounts, or practicing any form of deceit, or running away with the money, or actually expending the money for defendant’s own uses contrary to his directions, or otherwise diverting the course of the money to make it his own. Furthermore, intent may be made to appear from circumstantial as well as from direct evidence. * * * If, however, an act forbidden by law is intentionally done, * * * an
 
 *39
 
 intent to embezzle will be inferred. The law will presume a criminal intent, it has also been held, when one
 
 knowingly
 
 appropriates money belonging to another to his own private use; * * (Italics ours.) 9 Ruling Case Law, 1279, Section 20.
 

 The intent accompanying making false entries is dealt with in 3 Ruling Case Law, 501, Section 128.
 

 “The criminal intent specified in the statutes is an essential element of the offense of making a false entry. The motives which actuate men can be ascertained only by a scrutiny of their acts. One who passes a counterfeit coin
 
 knowing
 
 it to be counterfeit, and receives value in return, is not permitted to say that he did the act with innocent intent, and the same rule applies to the crime of making false entries. A bank officer who wilfully makes or causes to be made a false entry in its books,
 
 knowing
 
 it to be false, cannot be heard to say that he did the act innocently. Such an entry is calculated to deceive, and he who made it, or caused it to be made,
 
 knowingly,
 
 cannot avoid the inevitable presumption. * *
 
 *”
 
 (Italics ours.)
 

 The offenses charged in the different counts in this indictment are so interrelated that when proof of guilt on one count is made by the requisite degree of proof, such fact could be considered by the jury as reflecting, if it did so reflect, upon the guilty knowledge of Huffman as to the related count.
 

 It would be an unnecessary consumption of time and space to take up the federal cases wherein it has been uniformly held that a bank officer who wilfully makes or causes to be made a false entry, knowing it to be false, cannot be heard to say he did it innocently, but that if it was calculated to deceive, he cannot avoid the inevitable presumption.
 

 It has been held heretofore in
 
 McNary
 
 v.
 
 State,
 
 128 Ohio St., 497, 191 N. E., 733, as follows:
 

 “There is no rule requiring the Supreme Court of
 
 *40
 
 Ohio, in its interpretation of the statutory law of Ohio, to follow the decisions of the Supreme Court of the United States under any and all circumstances; but where the state of Ohio adopts federal statutes which have been previously construed by the Supreme Court of the United States, such construction will be regarded as most persuasive by the Supreme Court of Ohio, if not controlling.”
 

 Section 710-172, G-eneral Code, was at the time of its original enactment copied from the National Banking Act, and we do regard the decisions of the federal courts relative thereto as most persuasive, and that is particularly true when the independent view of this court coincides with that of the federal courts on the particular question. This court, in the case of
 
 Ridenour
 
 v.
 
 State,
 
 38 Ohio St., 272, realizing the difficulty of proving specific intent, said:
 

 “Where one shot another in the trunk of the body, and the result was to produce paralysis of a leg, causing a permanent disabling of that member, a verdict of guilty of shooting with intent to maim is supported by sufficient evidence. The accused might fairly be presumed to have intended the actual and natural result of his unlawful act.”
 

 The specific intent involved in that case was the intent to maim. Longworth, J., in passing on the case, said
 

 “The evidence showed that the accused shot Montgomery in the trunk of the body, near the navel, and from this it is argued that the intent, though possibly to Mil or to wound, could not have been to
 
 maim.
 

 “It further appeared, however, that a nerve was destroyed by the bullet in its course, and that although the patient has recovered, his right leg is disabled by paralysis, from which it is said he will never, in all probability, recover. From this it seems that the result of the shooting
 
 was actually to maim.
 
 Can it be said that the verdict finding that the accused intended
 
 *41
 
 the result of his criminal act was not warranted? We think not. The law presumes all persons to contemplate the natural and probable results of their actions; and we cannot say that the natural and probable result of such an injury as this is not to cause the loss of the use of some important member of the body.
 

 “Unquestionably, upon this state of the evidence, the accused might have been properly convicted, under section 6819 of the Revised Statutes, of disabling the limb, or in other words of the offense of
 
 actually ‘mcmming’
 
 the injured man; nor could he be heard for a moment to say that he did not
 
 intend
 
 to do the very thing he did.”
 

 This case has at no time been reversed or modified in the slightest.
 

 The following instruction has been given in Ohio hundreds of times in criminal cases, from murder in the first degree down to the most insignificant offense in which the element of intent was involved, viz.:
 

 “It is a general principle of law, that what a person of the age of discretion does wilfully, he or she intends to do, and intends the natural and reasonable consequences of his or her voluntary acts, unless the circumstances are such as to indicate the absence of such intention.”
 

 The case of
 
 Jones
 
 v.
 
 State,
 
 51 Ohio St., 331, 38 N. E., 79, is a cause
 
 celebre
 
 in Ohio. This was a homicide -case. One of the defenses was accidental shooting. The following special instruction was requested by the accused: 1
 

 “The burden of proof is not in this case upon the defendant to show that the gun was discharged by accident, or force exerted by other persons than the defendant, but that it is incumbent upon the state to establish, to the satisfaction of the jury, and beyond a reasonable doubt, that the defendant deliberately discharged the gun with premeditation and motive be
 
 *42
 
 fore you can find him guilty of murder in the first degree.”
 

 This instruction was refused, and the case was reversed on that ground alone. Judge Bradbury in his opinion comments upon another renowned case, as follows:
 

 “Commonwealth
 
 v.
 
 Webster,
 
 59 Mass. [5 Cush.], 295 [52 Am. Dec., 711]
 
 (supra),
 
 was the celebrated case involving the murder of Dr. Parkman. No intimation that his death resulted from an accident was ever made. The language used by Chief Justice Shaw, was to explain to the jury the difference between manslaughter and murder, according to the principles of the common law. The last he defines as ‘the killing of any person in the peace of the commonwealth with malice aforethought, either express or implied,’ while manslaughter is ‘the unlawful killing of another without malice.’ * * * The characteristic distinction between murder and manslaughter, he says, ‘is malice express or implied.’ He then proceeds: ‘Upon this subject, the rule as deduced from the authorities is that the implication of malice arises in every case of intentional homicide; and the fact of killing being first proved, all the circumstances of accident, necessity or infirmity are to be satisfactorily established by the party charged, unless they arise out of the evidence produced against him. If there are, in fact, circumstances of justification, excuse or palliation, such proof will naturally indicate them. But where the fact of killing is proved by satisfactory evidence and there are no circumstances disclosed, tending to show justification or excuse, there is nothing to rebut the natural presumption of malice. The rule is founded on the plain and obvious principle, that a person
 
 must be presumed to intend to do that which he voluntarily aaid wilfully does in fact do/
 
 * *
 
 *
 
 It is clear that the distinguished jurist who employed this language, did so with reference to the ease before him, and had in
 
 *43
 
 mind not an accidental, bnt a wilful homicide, and
 
 no wise conflicts with
 
 views we hold. He was asserting, and explaining to the jury, that one is presumed to contemplate the consequences of his voluntary and wilful act, but neither from the history of that celebrated case, nor the language of that great judge, when all of it is considered, can it be inferred that he intended to hold that a man shall be taken to contemplate the consequences of an act that he never designed. How can a man be held to contemplate the consequences of an act, when he did not contemplate the act itself?
 

 “The rule has been announced in this state more than once, in general terms, that from the act of killing malice might be inferred; but in all of them the intent to kill had been established, if that intent was an ingredient of the crime. It is also an established canon of the law of this state that one must be held to contemplate the consequences of his voluntary and deliberate acts, but as we have seen, it does not follow from these principles that one must be held to intend the consequences of involuntary acts, and assumes the burden of proving that he did not.” (Italics ours.)
 

 True, the court was dealing with the question of malice in the
 
 Jones case, supra,
 
 but it lays down the same rule adopted by the trial judge in the case before us.
 

 Presumptions as applied to criminal law are necessarily a part of trial practice, and we find them dealt with by recognized authority as follows:
 

 “The Effects of Presumptions — vary indefinitely. Some are slight; as—
 

 “Foot-prints — on a question of identity, if they correspond to those which would be made by the boots probably worn, or the horse probably ridden, are admissible, yet alone are inadequate to justify a conviction.
 

 “Photographs — are more satisfactory, but not conclusive. Their effect is for the jury.
 

 
 *44
 
 “Multitudes of Presumptions — similar to these, are relied on in criminal trials, though often of but slight effect; as, burglars’ tools found in the possession of the defendant in a burglary case, may aid other inculpatory evidence. It is so also of the cut clothing in a trial for stabbing. A defendant’s sex may be presumed from the clothes worn. And the jury may judge of his color from inspection.
 

 “Conclusive — are some presumptions of law, against which no evidence will be admitted. Thus,—
 

 “In Forgery, — one who does the act with the evil mind is conclusively presumed to intend a fraud on the person whose name is forged. So,—
 

 “In Homicide, — an unlawful act, wilful and producing death, is conclusively presumed to proceed from ‘malice aforethought.’
 

 “Adequate but not Conclusive — are some other classes of presumptions, wherein the defendant is permitted to show that although
 
 prima facie
 
 guilt may be inferred, it does
 
 not
 
 exist in the particular instance. Thus,—
 

 “Do what he does, — a man is presumed to intend what he does. But obviously this presumption is not conclusive; for he may have been forced, or insane. Indeed, the intent to do a thing is always open to rebuttal.
 

 “That the Natural and Probable Consequences
 
 — of
 
 an act, intentionally
 
 done,
 
 were likewise intended is one of the most common and best-established presumptions.
 
 But—
 

 “Not Always Conclusive — is this presumption. Doubtless it sometimes is. On which question, the distinctions depend on the particular issue and facts
 
 *
 
 * *
 

 “The Intent — of the defendant, dwelling in his mind invisible to the outward sight, can never be proved by the direct testimony of a third person,
 
 and it need not be.
 

 
 *45
 
 “It is shown by presumption; for example, an unlawful act implies an unlawful intent.
 
 The facts raising the various presumptions are limitless, differing with the cases and their circumstances.
 
 The burden of proving the alleged evil intent is with the prosecution, and the question is for the jury.” (Italics ours.) 2 Bishop’s New Criminal Procedure (2d Ed.), Chapter 75, page 943,
 
 et seq.
 

 “If a man commits the act of embezzlement, the presumption is that he intends to embezzle. ’ ’ 2 Bishop on Criminal Law, page 316, citing
 
 People
 
 v.
 
 Hennessey,
 
 15 Wend., 147 (N. Y.).
 

 Let it be remembered that in the instant case Huffman, at all times during trial, stood flatly on his general denial of the charges made in the indictment. He admitted that he made the entries but denied that he made them with intent to defraud or deceive, and denied that he embezzled the money. He made no plea of justification or excuse to the indictment. The jury found, and there was ample evidence to justify the finding, that Huffman did make the false entries and embezzle the money with guilty knowledge. Making the false entries lent color to the intent to defraud or injure the bank, and the embezzlement of the sums of money covered by the false entries surely made patent an intent to deceive.
 

 The Court of Appeals found that the instruction of the trial court to the jury on the question of the intent involved in the indictment, other than the last sentence thereof, was in the abstract.
 

 The Court of Appeals found that the last sentence was a concrete statement of law, but was erroneous.
 

 The statement of abstract propositions of law in an instruction will not warrant a reversal unless prejudice resulted to the complaining party. The law along this line is stated generally in 14 Ruling Case Law, 783, Section 49, viz.:
 

 “It is generally agreed that legal abstractions in a
 
 *46
 
 charge are not always hurtful and, unless it appears that they may have been so, the giving of them, while never to be approved, is not reversible error. * * * Still, while abstract instructions are not generally ground for reversal, it is the better practice to omit or refuse instructions of that character.”
 

 The subject is dealt with in 39 Ohio Jurisprudence, 949 and 950, Section 265, viz.:
 

 “Abstract propositions should be given only if concretely applicable to facts in issue, although it may be necessary to make some abstract legal statements in order to make the concrete statements in a charge clear and definite * * #. The principal and most forcible objection to abstract instructions, however correct in themselves, is that they are misleading and confusing, in that they tend to draw the minds of the jurors away from the real facts in the case, although it does not necessarily follow that the failure of the trial judge to conform to the rules stated above will require reversal of the judgment on review, in all cases, this depending upon whether or not the jury were or may have been misled by the instructions given.”
 

 In 2 Ohio Jurisprudence, 947, 948 and 949, Section 772, we find the following statement of the law, viz.:
 

 “The charging of mere abstract principles of law, or the giving of instructions which are so entirely outside of the case that it is apparent that the jury could have made no application of them and hence could not have been misled thereby to the prejudice of the plaintiff in error is not ground for reversal. * * * If the charge as a whole is full and fairly submits to the jury the real issues involved in the case, the fact that it contains a statement for which those issues do not call will not warrant reversal if such statement considered in the light of the whole charge could not have misled the jury. * * * Similarly, if an instruction is correct, or at any rate harmless, when applied to the facts
 
 *47
 
 of the case it is not prejudicial because it would be too broad or otherwise incorrect if regarded as an abstract statement of the law.”
 

 This text cites
 
 Columbus Mutual Life Ins. Co.
 
 v.
 
 National Life Ins. Co. of U. S. A.,
 
 100 Ohio St., 208, 125 N. E., 664. This was a
 
 per curiam
 
 opinion in which all members of the court concurred, and the following language is indicative of the regard in which this court held abstract propositions of law, viz.:
 

 “The second and third requests, as abstract propositions of law, are not sound, but since recovery necessarily depended upon proof of fraud and unworthy motives actuating the defendant, we are unable to see how any prejudice could arise from the giving of such special charges.”
 

 It will be seen from a perusal of the case just cited that special instructions were being dealt with, and that they were not sound as abstract propositions of law, but it was held that they were not prejudicial.
 

 We have gone into this question at length in order to determine whether or not that part of the charge of the trial court dealing with intent, which the reviewing court held was in the abstract, in any wise contaminated that part that was found to be concrete.
 

 We find no such contamination.
 

 Taking the general charge of the trial court by its four comers we find no prejudicial error in it, and the judgment of the Court of Appeals is reversed and that of the Court of Common Pleas is affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Williams, Jones, Matthias, Day and Zimmerman, JJ., concur.