THE STATE OF OHIO, APPELLEE, *v.* HEAD, APPELLANT.

(Nos. 51252 and 51253 — Decided November 17, 1986.)

*John T. Corrigan,* prosecuting attorney, for appellee.

*James R. Willis,* for appellant.

KRUPANSKY, J. On June 21, 1984, in case No. CR-191759, defendant, Edith Head, was indicted for one count of petty theft under R.C. 2913.02, one count of grand theft pursuant to R.C. 2913.02 and four counts of theft in office under R.C. 2921.41. The one count of grand theft and one count of theft in office were nolled. On May 2, 1985, in case No. CR-199763, the defendant was indicted for one count of theft and two counts of grand theft under R.C. 2913.02 and three counts of theft in office pursuant to R.C. 2921.41. The defendant pleaded not guilty to the charges. The two indictments were consolidated for purposes of trial.

A jury trial commenced on August 26, 1985. Defendant moved for a judgment of acquittal on all charges both at the conclusion of the state's case and after all the evidence had been presented. The trial court overruled defendant's motions for acquittal. The jury found defendant guilty of all ten counts as charged in the two indictments.

In a journal entry filed November 25, 1985, the trial court granted defendant's request to merge the theft convictions with the convictions of theft in office. The trial court then sentenced defendant to a term of imprisonment of not more than two years at the Ohio Reformatory for Women. In a journal entry filed December 2, 1985, the trial court amended defendant's sentence to include "that she cannot hold public office, employment or position of trust in this State pursuant to her convictions for violation of 2921.41 R.C., theft in office."

In case No. CR-191759, defendant filed a timely notice of appeal (Court of Appeals case No. 51252) on November 26, 1985. In case No. CR-199763, defendant also filed a timely notice of appeal (Court of Appeals case No. 51253) on November 26, 1985. This court *sua sponte* consolidated appellate case Nos. 51252 and 51253 for record, briefing, hearing and disposition.

The record reveals appellant became a commissioner for the city of East Cleveland in approximately 1976. However, the case *sub judice* involves indictments covering the time period from 1982 to 1984. The charges against appellant arose from several instances when appellant accepted monetary advances from the city of East Cleveland for official events associated with her position as commissioner and then permitted payments to be made on her behalf for those same events without returning the previously advanced funds to the city of East Cleveland.

The evidence introduced at trial established the regular procedure for reimbursing city of East Cleveland commissioners for expenses they incurred while attending events in their official capacity as city commissioners was as follows. The city of East Cleveland would prepay the commissioners' registration fees. Then the city would give each commissioner a travel advance to cover her hotel and per diem. Each commissioner takes care of her own arrangements. If the advance is more than the expenses she actually incurs, then she returns the excess funds to the city. If the advanced funds are insufficient to cover her actual expenses, then she requests the city reimburse her for the additional money she spent.

The evidence adduced at trial demonstrated appellant failed to comply with the city of East Cleveland's policy on several occasions. The first incident occurred when appellant attended a National League of Cities convention in Los Angeles, California from November 26 to December 2, 1982. East Cleveland gave appellant an $860 travel advance to attend the convention. However, Central Installation Company, a company which provided East Cleveland with water meter services, paid all the commissioners' convention registration fees, hotel and room service bills as well as two dinners. Appellant knew the Central Installation Company paid for these expenses. However, appellant never repaid the city the money she did not spend on the convention.

Similarly, appellant attended the American Waterworks Convention in Las Vegas, Nevada from June 3 to June 8, 1983. East Cleveland paid appellant a $700 travel advance for this convention. However, Central Installation Company paid for the city of East Cleveland commissioners to attend this convention; the company paid their registration fees, hotel and room service bills, air fare and one dinner. Nevertheless, appellant kept the $700 travel advance she had received to attend this convention and accepted from the city another $354.16 for additional expenses she incurred in Las Vegas.

In February 1983, appellant used

$840 advanced to her from East Cleveland for an upcoming convention in Washington, D.C. to take a personal trip to Alabama. In addition, the city of East Cleveland paid $378 for appellant's round trip airfare for her Alabama trip. When appellant informed the then acting city manager, John Urban, she had spent her advance, Urban gave her a second travel advance in the amount of $1,000 for the Washington, D.C. trip. The record also reveals the city gave appellant a check for $590 to cover her room and board. John Urban received $3,000 in cash from Central Installation Company for the commissioners' Washington, D.C. trip; Urban gave $700 of that $3,000 to the appellant. While appellant was in Washington, D.C., Urban also wired $300 to the appellant at her request because she was out of funds. Despite the fact the city had advanced hundreds of dollars to appellant, she charged her hotel bill and other expenses to her city of East Cleveland business VISA account. When appellant returned from Washington, D.C., she claimed she spent $300 more than the city advanced to her and, thus, East Cleveland paid her another $300. Once again, appellant never reimbursed the city for the funds she spent on her personal matters rather than on her official duties.

In addition to the cash advances appellant received for the Washington, D.C. trip, she was given a $160 plane ticket. Appellant lost the ticket and purchased a replacement ticket for $262 which she charged to the city of East Cleveland VISA account. Appellant later found the original ticket, cashed it in at the airlines office and kept the $160. She did not repay the city for the $160 because "nobody asked her for the money."

Furthermore, in December 1983, appellant rented a car for her personal use from Qua Buick. The city of East Cleveland paid the $516 bill for the appellant's rental car.

Appellant made no attempt to reimburse the city for any city funds she used for her personal needs in 1982, 1983 and 1984 until after the police began their investigation in March 1984. Then she and John Urban arranged for her to pay back the city at the rate of $50 per month.

Appellant's sole assignment of error states as follows:

"The court erred in denying the appellant's motion for judgment of acquittal made at the close of all the evidence."

The appellant's assignment of error lacks merit.

Appellant contends the trial court erred in failing to grant her motion for acquittal because the prosecution failed to prove the requisite criminal intent, viz., "knowingly," which element is necessary to convict the appellant of the theft offenses with which she was charged.

R.C. 2921.41, theft in office, provides, in pertinent part, as follows:

"(A)  No public official or party official shall commit any theft offense, as defined in division (K) of section 2913.01 of the Revised Code, when either of the following applies:

"(1)  The offender uses his office in aid of committing the offense, or permits or assents to its use in aid of committing the offense;

"(2) The property or service involved is owned by this or any other state or the United States, a county, municipal corporation, or township, or any political subdivision, department, or agency of any of them, or is owned by a political party, or is part of a political campaign fund."

R.C. 2913.02, theft, states, in pertinent part, as follows:

"(A)  No person, with purpose to

deprive the owner of property or services, shall *knowingly* obtain or exert control over either the property or services in any of the following ways:

"(1) Without the consent of the owner or person authorized to give consent;

"(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

"(3) By deception;

"(4) By threat." (Emphasis added.)

R.C. 2901.22(B), culpable mental states, defines "knowingly" as follows:

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

In order to ascertain whether appellant "knowingly" used East Cleveland funds intended for official purposes for her personal use without returning the funds to the city the totality of the circumstances must be examined:

" 'The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person and it need not be. It must be gathered from the surrounding facts and circumstances under proper instructions from the court.' " *State* v. *Johnson* (1978), 56 Ohio St. 2d 35, at 38, 10 O.O. 3d 78, at 80, 381 N.E. 2d 637, at 640, citing *State* v. *Huffman* (1936), 131 Ohio St 27, 5 O.O. 325, 1 N.E. 2d 313, pargraph four of the syllabus.

In the case *sub judice,* the evidence established appellant was a public official in East Cleveland. There was a standard procedure by which the city funded its commissioners' official duty related expenses, *viz.,* the officials were given travel advances, the excess of which was to be returned to the city if the commissioners did not spend the entire amount of the advance. Appellant was aware Central Installation Company had paid certain of her expenses in Los Angeles and Las Vegas. She also knew the city had paid many of her expenses in Washington, D.C. and that the money she spent to go to Alabama was the city's money intended for use in the course of her official duties. It was obvious the money she spent on personal items and failed to return to the city was not her money. Moreover, appellant's knowledge she wrongfully retained this money is revealed by the fact she entered into an agreement in April 1984 to repay the city the funds she used for non-official purposes during the previous three years beginning in 1982 only after the police began to investigate the improprieties in the city of East Cleveland's government in March 1984.

Crim. R. 29(A) sets forth the standard for granting or denying a motion for acquittal, in pertinent part, as follows:

"The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. * * *"

In *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261, 9 O.O. 3d 401, 381 N.E. 2d 184, syllabus, the Ohio Supreme Court elaborated on the Crim. R. 29(A) standard as follows:

"Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each

material element of a crime has been proved beyond a reasonable doubt."

Since reasonable minds could reach different conclusions as to whether, under the totality of the circumstances, appellant deprived the city of East Cleveland of its funds by knowingly obtaining or exerting control over those funds, the trial court did not err in overruling appellant's Crim. R. 29(A) motion for acquittal.

Accordingly, appellant's assignment of error fails.

*Judgment affirmed.*

MARKUS, C.J., and NAHRA, J., concur.