DECISION
Defendant-appellant, Lula M. Wallace, appeals from a judgment of conviction and sentence entered pursuant to a jury verdict in the Franklin County Court of Common Pleas finding her guilty of one count of felonious assault.
The charges against appellant arose out of a confrontation at the Bill Swad Chevrolet located at 100 S. Hamilton Road in Columbus, Ohio, on March 10, 1998. Appellant had gone to the dealership to discuss financial matters arising out of her purchase of a 1994 Cadillac from the dealership. It is undisputed that appellant, upon finding her automobile deliberately blocked in by a vehicle parked behind her by dealership personnel, drove her car over a curb, across a narrow grassy area, and narrowly missed Whitehall Police Officer Mark Thomas, who was working part-time for the dealership. Based upon this incident, appellant was indicted on one count of felonious assault, a violation of R.C. 2903.11 and a felony of the first degree, rather than the second degree, due to the fact the victim was a peace officer. Appellant was also charged with three counts of passing bad checks, a felony of the fifth degree.
`At trial, Christopher Bowman, a manager for Bill Swad Chevrolet and for the dealership's associated credit company, Hamilton Acceptance, testified for the prosecution. On the day in question, Bowman was contacted by his boss, Bill Swad, Jr., and notified that a heated verbal confrontation was taking place between appellant and Swad. Appellant was immediately hostile towards Bowman upon his arrival in Swad's office and emphatically stated that she did not wish to deal with Bowman at all based upon her prior experience with him.
Bowman testified that the dispute between the dealership and appellant arose out of three checks which appellant had written towards her down payment on her car, each for $500, which had all been returned for insufficient funds. Bowman also testified that appellant had previously paid $2,500 towards the down payment, and it was the remaining $1,500 of the down payment represented by the three checks, that was in dispute. Bowman testified that it was a common practice, both at Bill Swad Chevrolet and other dealerships, to allow customers to make a down payment with checks for which they did not yet have sufficient funds, with the understanding that the dealership would not cash the checks until an agree-upon date. In appellant's case, however, Bowman stated that the usual dealership procedures for such a "check hold" had not been followed.
Bowman testified that he had dealership employees block in appellant's Cadillac with another car, as he intended to repossess the vehicle that day. After appellant became increasingly upset with both Swad and Bowman, she left the building and proceeded to her car. Bowman signaled to Officer Thomas, who was in another office, that he required assistance. Officer Thomas responded and identified himself to appellant as she was getting into her car. Officer Thomas showed appellant his badge, but Bowman testified that appellant did not visibly acknowledge Officer Thomas' statement that he was a police officer. Appellant then got into her vehicle, with Officer Thomas standing in front of it on the curbed grassy strip separating the parking spot occupied by appellant from the glass front of the dealership. Appellant "gunned" her car up over the curb, through the grass, and back onto the lot to exit the dealership, so that Officer Thomas had to jump out of the way to avoid being hit. Bowman testified that he had first thought that Officer Thomas had been hit and was surprised that Officer Thomas did not at least have his foot run over by appellant's car.
After appellant left the dealership parking lot, Bowman and Officer Thomas procured another vehicle and attempted to follow appellant. Two Whitehall police cruisers also joined the chase but eventually lost appellant in freeway traffic. Appellant was driving at a high rate of speed and changing lanes frequently, apparently in a deliberate attempt to lose her pursuers.
Officer Thomas testified that he was employed as a police officer with the Whitehall Police Department. He stated that his part-time employment was a second job with Bill Swad Chevrolet at the time of the offense, and he was wearing plain clothes on the day in question. On that day, Officer Thomas stated, he was alerted by Bowman that a problem involving appellant had arisen at the dealership. Officer Thomas testified that, based upon Bowman's information that appellant had written several checks which had been returned for insufficient funds and in addition had not made her car payment on her vehicle, the vehicle was to be blocked in for repossession. Officer Thomas testified that as he followed appellant out of the dealership, he displayed his badge and identified himself as a police officer. He stated that he identified himself to appellant, as well as asking appellant to speak with him, a total of three times, but she generally ignored him. After she entered her vehicle, she revved the engine, put it in gear and accelerated over the curb and through the narrow grassy area where he was standing. Officer Thomas testified that he had to "dive" out of the way to keep from being hit. He also stated that, as he stood directly in front of the vehicle while appellant took the wheel, he made direct eye contact with her from a distance of approximately five feet.
Officer Thomas also testified as to the circumstances of appellant's eventual arrest. Officer Thomas located appellant at an address on Woodland Avenue in Columbus. While in an unmarked police vehicle, he observed appellant leave in her 1994 Cadillac purchased from Bill Swad Chevrolet. A pursuit followed which involved Thomas and two Columbus police cruisers, and after approximately one mile of chase appellant was forced to the side of the road and arrested. After appellant was taken to the police station, she initially indicated that she would not speak to Officer Thomas. Later, after she had been read her rights, Officer Thomas testified that he asked appellant whether she had heard him identify himself as a police officer at the auto dealership. Appellant replied, "maybe I did, maybe I didn't."
The sole witness on behalf of the defense was Manual Vaz, who testified that in November 1997, he worked as an automobile salesman at Bill Swad Chevrolet. Vaz testified that he was the salesman who sold appellant the 1994 Cadillac, and on that date appellant wrote three checks in the amount of $500 each to be put towards the remainder of the down payment which she owed on the vehicle. Vaz testified that the checks were written on November 13, 1997, but at the time appellant tendered the checks she indicated she did not have funds to cover them and that they were be deposited on December 25, 1997. Vaz further testified that Swad had authorized acceptance of the checks, and that the hold date of December 25 was written on the memo line of the checks.
At the conclusion of trial, the jury returned a verdict of not guilty on the bad check charges, but a verdict of guilty on the felonious assault charge. The trial court later imposed a sentence of four years incarceration.
Appellant has timely appealed and brings the following sole assignment of error:
 THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION AND THE CONVICTION WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
Appellant's assignment of error challenges her conviction as not being supported by sufficient evidence, and as against the manifest weight of the evidence. The legal concepts of sufficiency of the evidence and weight of the evidence involve different determinations. State v. Thompkins (1997), 78 Ohio St.3d 380,386. As to sufficiency of the evidence, "`sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Id., citing Blacks Law Dictionary (6th Ed. 1990), at 1433. A determination as to whether the evidence is legally sufficient to sustain a verdict is a question of law. Thompkins,
at 386. The relevant inquiry on review of the sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of facts could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia (1979), 99 S.Ct. 2781, 2789. A reversal based on insufficient evidence has the same effect as a not guilty verdict and thus precludes retrial, because such a determination means that no rational fact finder could have voted to convict the defendant. Tibbs v. Florida (1982), 102 S.Ct. 2211,2218.
As opposed to the concept of sufficiency of the evidence, the court in Thompkins noted that:
 Weight of the evidence condemns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence
sustains the issue which is to be established before them Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.) Black's, supra, at 1594.
 When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. *** Thompkins, supra, at 387. (Citations omitted.)
In Thompkins, the court cited with approval language from State v.Martin (1983), 20 Ohio App.3d 172, 175, in which that court held that, in considering a manifest weight challenge, an appellate court "review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." In State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported, this court noted that, when called upon to consider the issue of manifest weight of the evidence, "the appellate court must engage in a limited weighing of the evidence to determine whether there is sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt."
Section 2903.11(A) of the Ohio Revised Code defines the offense of felonious assault:
(A) No person shall knowingly:
 (1) Cause serious physical harm to another or to another's unborn;
 (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.
Appellant argues that her conduct does not constitute the offense of felonious assault for two reasons: her conduct did not meet the element of "knowingly," and the evidence showed that she did not use her car as a "deadly weapon or dangerous ordnance," because she was using the car as a means of escape rather than a weapon.
R.C. 2901.22(B) defines the elements of "knowingly" as follows: "a person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exists." A defendant's intent is a question of fact to be determined by a trier of fact from the surrounding circumstances.State v. Huffman (1936), 131 Ohio St. 27, paragraph four of the syllabus; State v. Austin (1976), 52 Ohio App.2d 59.
The testimony at trial is sufficient to support such an inference of intent on the part of appellant. Accepting the prosecution's evidence presented at trial, when appellant gunned her car and accelerated over the curb with Officer Thomas standing directly in her path, it could be concluded that she was "aware that her conduct would probably cause a certain result" if Officer Thomas were not able to jump from her path, which he in fact was able to do only by the narrowest of margins. Appellant presented no competing facts at trial. While testimony is unanimous that appellant was extremely upset when she left the dealership offices, and upon finding her vehicle blocked in, her single-minded determination to leave the premises with her vehicle does not preclude a finding that she knowingly attempted to cause physical harm to Officer Thomas, independent of her other motives for her overall conduct on the day in question.
With respect to appellant's deadly weapon contentions, an instrument is a deadly weapon when it is of "sufficient size and weight to inflict death upon a person and when the instrument is wielded or threatened to be wielded against the body of a person. The manner of use or threatened use of the instrument and the nature of the instrument, determine its capability to inflict death." State v. Deboe (1977), 62 Ohio App.2d 192. An automobile may be classified as a deadly weapon when used in a manner likely to produce death or serious bodily harm. State v. Brown (Mar. 21, 1995), Franklin App. No. 94AP-1391, unreported. In Brown, on facts remarkably similar to the ones before us, the defendant drove at an identified police officer standing in his path and blocking his route to escape. The conviction for felonious assault was affirmed. In the present case, appellant was approached by Officer Thomas showing his badge, and identifying himself as a police officer. Officer Thomas was standing off the tarmac, on a grass strip separated from appellant's parking space by a curb. Appellant accelerated sufficiently to drive her car over the curb and directly at Thomas, forcing him to jump aside to avoid being hit. There is no indication that Thomas was not visible, and appellant presented no testimony to refute the testimony of Thomas and Bowman that Thomas had clearly identified himself verbally and through showing his badge as a police officer.
Based upon the foregoing, the evidence presented at trial establishes that appellant's conviction was neither against the manifest weight of the evidence nor supported by insufficient evidence. The testimony at trial, viewed in the light most favorable to the prosecution, constituted legally sufficient evidence so that a rational trier of fact could have found that appellant acted knowingly and employed a deadly weapon in the form of her car. There is also no support in the record to show that the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed" pursuant to Thompkins, supra. Appellant's assignment of error is accordingly overruled and the judgment of conviction of the Franklin County Court of Common Pleas. is affirmed.
Judgment affirmed.
BOWMAN, P.J., and BROWN, J., concur.