JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Karl Owens, appeals from the judgment of the Common Pleas Court, rendered after a bench trial, finding him guilty of theft and sentencing him to 12 months incarceration. Owens argues that his conviction was against the manifest weight of the evidence. Finding no merit to his appeal, we affirm.
 {¶ 2} In the winter months of 2002 and 2003, store managers at Home Depot stores in the Cleveland area became aware that the "DeWalt Combo Kit" was disappearing from shelves at an unusually high rate. The kit, which is manufactured by DeWalt, is approximately the size of a small briefcase, contains a drill and several other tools, and sells for $499.00.
 {¶ 3} In voice mail messages to each other, store managers and loss prevention officers at various Home Depot stores circulated their observations regarding the disappearing kits to each other. From these messages, a pattern surrounding the disappearances emerged.
 {¶ 4} The items would be found missing shortly after a group of four or five white men visited a store. The men would enter a Home Depot store within minutes of each other. All of the men either carried handheld cellular telephones or wore an earpiece/mouthpiece cellular phone combination. Several of the men would head to the Garden Center area of the store. One of the other men would get a shopping cart and place several DeWalt combo kits in his cart. Often, he would cover the kits with a "For Sale" sign from the store or, sometimes, with his coat. This individual would then wander around the store, sometimes for several hours, while talking on his cellphone. Often, one of the other men would pass him in an aisle and then start pushing the cart. Eventually, one of the men would push the cart into the Garden Center area of the store. Subsequently, either that male left the Garden Center without the cart, or another male would push the cart back out into the store. In either event, the cart no longer contained any merchandise. The men would then leave the store without purchasing anything. After they left, Home Depot employees would inevitably find a hole cut in the chain link fence surrounding the Garden Center and DeWalt combo kits missing.
 {¶ 5} By January 20, 2003, Larry Gleba, loss prevention officer at the Highland Heights Home Depot store, had seen pictures of the suspected thieves. At approximately 4:00 p.m. on that day, as he sat in his office watching video surveillance of the area where the DeWalt kits were located, he saw a man, later identified as Gary Boggs, put a DeWalt kit into his cart. As this man left the tool area, he passed another man, later identified as Owens, who placed a DeWalt combo kit and a Bosch drill into his shopping cart. Owens then placed a "For Sale" sign over the merchandise and left the tool area, pushing his cart. Gleba observed Boggs talking on a cell phone via headset, while Owens was talking on a handheld cell phone.
 {¶ 6} Suspecting that these men were involved in the thefts at the various stores, Gleba exited his office and asked several other employees to help him follow these men while they were in the store. Jason Nobbe, a Home Depot supervisor, testified that he followed Owens as he pushed his cart around the store while constantly talking on his cell phone. At various times, Owens would meet up with Boggs, stop for a moment, and then keep walking. The last time they met up, Boggs took the cart from Owens and began pushing it. Nobbe testified that he eventually lost sight of Boggs, but subsequently observed Owens exit the store, followed a few minutes later by Boggs. Neither man purchased any merchandise.
 {¶ 7} Gleba testified that he, too, followed Owens and Boggs as they wandered through the store that day for over an hour. According to Gleba, when Owens pushed the cart in an area adjacent to the Garden Center, he saw two other men, later identified as Joseph Miller and Brian Whitlow, whom he recognized from the pictures he had seen. Like Owens, both of these men were talking on handheld cell phones and pushing a shopping cart. According to Gleba, they were "constantly looking up and down the aisles," and would sometimes cross paths with Owens and Boggs.
 {¶ 8} At some point, Gleba lost sight of Owens and Boggs, but then saw them leaving the store a short time later. After they were gone, Gleba found a shopping cart containing a "For Sale" sign, but no DeWalt combo kits, in the Garden Center. The cart was next to a new hole in the chain link fence.
 {¶ 9} Patrick Hardy, loss prevention officer at the Home Depot store in Euclid, Ohio, testified that he observed the same men, using the same method of operation, at the Euclid store earlier in the day on January 20, 2003. Specifically, Hardy testified that Owens and Boggs entered the store within minutes of each other. Each man took a shopping cart, immediately went to the tool area, and placed a DeWalt combo kit in his cart. Hardy testified that Owens covered the combo kit in his cart with a "For Sale" sign.
 {¶ 10} Like Gleba, Hardy enlisted the help of several store employees to watch the men. According to Hardy, the men, who were pushing their carts all over the store while talking on their cell phones, eventually became aware that their actions were being monitored and left the store. After they left, Hardy found two DeWalt combo kits hidden in cabinets in an aisle where Owens and Boggs had pushed their carts while they were in the store, and another combo kit in a discarded shopping cart.
 {¶ 11} The next day, January 21, 2003, assistant store manager Darryl Woods saw the same four men in the Highland Heights store. After discovering that the Garden Center fence had been cut again, he telephoned the police to report that "a few individuals [who] were suspected of theft" were inside the store. Then he, too, enlisted other store employees to watch the men. Apparently aware that they were being watched, all of the men exited the store shortly thereafter. Woods noted the license number and model of the vehicle that two of the men, Whitlow and Miller, got into; Woods and another employee then followed Owens and Boggs as they walked across the parking lot to a nearby Denny's restaurant. After they left, another employee found a box containing wire cutters and plastic wire zip ties near the Garden Center fence.
 {¶ 12} When the police arrived, Home Depot employees directed them to Denny's, where the employees identified Owens and Boggs as two of the individuals involved in the thefts. They were arrested and transported to the police station. Other officers stopped the vehicle matching Woods' description and arrested Whitlow and Miller.
 {¶ 13} Detective Dennis Matejcic testified that he interviewed Owens shortly after his arrest. Owens initially told Matejcic that he had an argument with his girlfriend as they were riding on the freeway, and when she stopped the car, he got out and walked to Denny's. He later changed his story and reported that he went to Home Depot with Boggs, where they used the restroom and then went to Denny's. Owens initially denied being in the store on January 20, but, after he was shown a picture of him from the video surveillance film of January 20, he admitted he was there to buy "drop ceiling items" for a friend's remodeling project. Later, he changed this story and stated that he and Boggs had been dropped off at Home Depot by their boss on January 20.
 {¶ 14} Michael D'Onofrio, a department manager at the Highland Heights Home Depot, testified that he determined, after comparing a computer inventory sheet regarding inventory that should have been on hand during December 2002 and January 2003, with an actual inventory count of DeWalt combo kits on the shelves, that Home Depot lost a significant number of DeWalt combo kits to theft during this time period. According to D'Onofrio, the loss was "huge."
 {¶ 15} Owens was indicted with his co-defendants on two counts: theft of property in an amount over $5000, in violation of R.C. 2913.02, and possession of criminal tools, in violation of R.C. 2923.24. Following the presentation of the State's case, the trial judge reduced the theft charge to the lesser included offense of theft in an amount over $500 but less than $5000, making the charge a fourth, rather than a fifth degree felony, and dismissed the possession of criminal tools charge.
 {¶ 16} The trial judge found each of the defendants guilty of the lesser included theft offense. The judge sentenced Owens to twelve months incarceration, to be served consecutive to six months incarceration as a probation violator in Case No. CR-376389. This appeal now follows.
 {¶ 17} In his single assignment of error, Owens contends that his conviction was against the manifest weight of the evidence.
 {¶ 18} A manifest weight challenge questions whether the State has met its burden of persuasion at trial. State v. Thompkins (1997),78 Ohio St.3d 380, 390. When considering an appellant's claim that the conviction is against the weight of the evidence, a reviewing court sits essentially as a "`thirteenth juror' and [may] disagree with the fact finder's resolution of the conflicting testimony." Thompkins, supra at 387, quoting Tibbs v. Florida (1982), 457 U.S. 31, 42. The reviewing court must examine the entire record, weighing the evidence and considering the credibility of witnesses, while being mindful that credibility generally is an issue for the trier of fact to resolve. Statev. Thomas (1982), 70 Ohio St.2d 79, 80. The court may reverse the judgment of conviction if it appears that the fact finder, in resolving conflicts in the evidence, "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, 78 Ohio St.3d at 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction. Id.
 {¶ 19} Owens argues that his conviction was against the manifest weight of the evidence because none of the witnesses who testified at trial saw him take any merchandise from Home Depot. They testified only that he walked around the store with merchandise in his cart and then left the store, without purchasing anything. Therefore, Owens contends, the State failed to prove beyond a reasonable doubt that he was guilty of a theft offense. We disagree.
 {¶ 20} As an initial matter, we observe that although much of the evidence against Owens is circumstantial, "[c]ircumstantial evidence and direct evidence inherently possess the same probative value. In some instances certain facts can only be established by circumstantial evidence." State v. Jenks (1991), 61 Ohio St.3d 259, 272.
 {¶ 21} Next, we note that R.C. 2913.02, regarding the offense of theft, provides, in pertinent part:
 {¶ 22} "(A) No person, with purpose to deprive the owner of propertyor services, shall knowingly obtain or exert control over either the property or services * * * without the consent of the owner or person authorized to give consent." (Emphasis added.)
 {¶ 23} Accordingly, as defense counsel conceded during trial, the issue is not whether Owens actually carried any items out of Home Depot, but whether Owens exercised control over the DeWalt combo kits with the intent to steal them. (Tr. 223).
 {¶ 24} "The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person, and it need not be. It must be gathered from the surrounding facts and circumstances * * *."State v. Huffman (1936), 131 Ohio St. 27, paragraph four of the syllabus. Here, the "surrounding facts and circumstances" demonstrate, beyond a reasonable doubt, that when he put the DeWalt combo kits in his shopping cart on January 20, 2003, Owens intended, with the help of his co-defendants, to steal them.
 {¶ 25} The evidence before the court consisted of eyewitness accounts placing Owens, on three separate occasions, inside a Home Depot store while in the company of the other three co-defendants.
Further, the evidence established that each time Owens was in a store, he acted in the same way. He would put at least one DeWalt combo kit in his cart, and then cover it with a "For Sale" sign. Although he would push the cart around the store for long periods of time, he never purchased anything, or ever stopped to look at any other merchandise. After he and his co-defendants left the store, a new hole would be found in the Garden Center area fence and DeWalt kits would be missing from the store. Thus, the evidence established a common method of operation by the four codefendants.
 {¶ 26} The videotape surveillance of Owens' and Boggs' activities on January 20, 2003, was also put into evidence. The video shows Boggs pushing a shopping cart into the tool area, putting a DeWalt combo kit into his cart, and then bending down. Boggs then stands up and pushes his cart down the aisle. The tape shows that Owens then immediately enters the tool area. As he passes Boggs, who is leaving the area, both men hesitate for a moment. Owens then pushes his cart into the tool area, and bends down at the same spot where Boggs had bent down a few moments earlier. Owens then stands up and pushes his cart, which now contains a DeWalt combo kit, out of the tool area. He subsequently covers it with a "For Sale" sign and then wanders around the store for nearly two hours, never putting any other merchandise in his cart, but often crossing paths with Boggs, while both are talking on cell phones. As the trial judge concluded, the videotape demonstrates that Owens and Boggs were working "in concert" to deprive Home Depot of its property.
 {¶ 27} The evidence also established that Owens gave inconsistent statements to the police regarding why he was at Home Depot on January 21, 2003. He also initially denied being at Home Depot on January 20, 2003, and only admitted he was there after he was shown a picture of him from the surveillance tape. These statements, although circumstantial evidence, tend to indicate Owens' involvement in the common scheme.
 {¶ 28} In light of this evidence, we hold that the trier of fact could have reasonably concluded that Owens' intent upon placing the DeWalt combo kits in his cart was to steal the kits from Home Depot. Despite the fact that no one saw him leaving Home Depot with any stolen merchandise, a reasonable inference from the evidence is that Owens' intent, by participating in the common scheme with the other defendants, was to deprive Home Depot of its property. After reviewing the entire record, weighing the evidence, and considering the credibility of the witnesses, we are not persuaded that the trier of fact lost his way and created such a miscarriage of justice that Owens' conviction must be reversed.
 {¶ 29} Appellant's assignment of error is overruled. Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., and Calabrese, Jr., J., Concur.