## State v. Foster
*[Cite as 8 AOA 575]*

*Case No. 90AP-05*
*Franklin County, (10th)*
*Decided November 6, 1990*

*Michael Miller, Prosecuting Attorney, Bonnie L. Maxton and Joyce S. Anderson, for Appellee.*

*James Kura, Public Defender, and John W. Keeling, for Appellant.*

STRAUSBAUGH, J.

This is an appeal by defendant from a judgment of the Franklin County Court of Common Pleas following a finding of guilty by the jury on three felony counts. Defendant was sentenced to concurrent terms of ten to twenty-five years on the aggravated burglary conviction and eight to fifteen years on the felonious assault and kidnapping convictions.

The state's entire case against defendant, Ricky Foster, consisted of the testimony of two witnesses, Janice Orr and her husband Dwight Orr. Janice Orr testified that on the evening of February 5, 1989, she was at home with her husband and three children. Shortly after midnight on February 6, 1989, she stated that her husband left their home and returned an hour later only to leave again around 2:30 a.m. or 3:00 a.m. Later, Janice Orr went looking for her husband because she suspected that he may have been with another woman. Janice Orr and her daughter located her husband's vehicle at the Radisson Hotel and they went room-to-room until they located her husband on the third floor. At that time, Dwight Orr was present with Vincent Boyd, Freddie Shephard, and defendant, who were in the room smoking crack. Shortly thereafter, Janice Orr and her daughter left the hotel followed by her husband and Boyd, who returned to the Orr household at about 7:00 a.m.

Janice Orr testified that they smoked crack, marijuana, and drank beer for the rest of the day. Janice Orr stated that defendant visited their home at about 5:00 p.m. that day and talked with Boyd a short time before leaving. Later that evening, between 7:00 p.m. and 8:00 p.m., Janice Orr stated that she was in the upstairs bedroom. She stated that her husband went downstairs when he heard someone at the door and that she did not see her husband but rather encountered the defendant, who was armed with a shotgun. She further testified that defendant wanted to know where Boyd could be located. Janice Orr then testified that she attempted to protect Boyd by claiming that he was not there. She stated that defendant insisted that Boyd was there so she called out to warn Boyd and started back up the stairs. Defendant went up a few steps and then returned to the lower level of the house. Janice Orr stated that she then went upstairs to hide Boyd in a closet. She further testified that defendant returned with another unidentified man and Boyd surrendered to them with his hands up.

Before surrendering, Boyd gave Janice Orr $685. The men then left with Boyd and Janice Orr later went downstairs and prepared an ice pack for her husband due to an injury he received when he encountered defendant and the other unidentified man.

Dwight Orr also testified that upon their return from the Radisson Hotel, he, his wife, his daughter, and Boyd smoked crack on and off during the course of the day. Dwight Orr stated that defendant returned to his home at about 2:00 pm. by himself to talk to Boyd. However, defendant was unable to talk to Boyd because Boyd did not want to talk to him. Dwight Orr further testified that at about 7:00 pm. he heard a car pull into the driveway and that he opened the back door. After seeing defendant approach with a shotgun, Dwight Orr went back into the house and locked the door. He stated that defendant broke a window, unlocked the door, entered the kitchen, and ordered him to go outside where he was left with another man who was holding a pistol. Dwight Orr stated that he started struggling with the man with the pistol and that defendant returned and hit Dwight Orr in the head with the butt of the shotgun. Dwight Orr stated that he feigned unconsciousness until the two men left and then ran off, and only returned to his home after the two men had left.

Subsequently, defendant was indicted on seven felony counts based upon the alleged incident occurring on February 6, 1989. Four counts involving charges of felonious assault, kidnapping, aggravated robbery, and robbery were dismissed prior to the trial at the request of the state. The firearms specifications on the remaining three counts were similarly dismissed, and defendant proceeded to trial on the charges of felonious assault, kidnapping, and aggravated burglary. Following a jury trial, defendant was found guilty on all counts and was sentenced to concurrent terms of ten to twenty-five years on the aggravated burglary conviction and eight to fifteen years on the felonious assault and kidnapping convictions.

On appeal, defendant sets forth five assignments of error for this court's review:

"1. The defendant was deprived of his right to the effective assistance of counsel due to the conflict of interests between the defendant and his counsel.

"2. The evidence was insufficient to support a conviction for aggravated burglary based upon the charge that the defendant trespassed in an occupied structure with the purpose to commit therein felonious assault.

"3. The evidence was insufficient to support a conviction for kidnapping when the state failed to prove beyond a reasonable doubt that the alleged victim was removed from the place where he was found for the purpose of terrorizing him or inflicting serious physical harm upon him.

"4. The trial court erred when it refused in its general charge to the jury, following arguments, to instruct on the law of circumstantial evidence as requested by the defendant. The trial court compounded the error by telling the jurors he would not repeat the jury instructions at a later point in time.

"5. The trial court erroneously held that evidence favorable to the defendant was inadmissible."

In his first assignment of error, defendant argues that he was denied effective assistance of counsel in the trial court based upon a conflict of interest between defendant and, his counsel. Prior to the start of defendant's trial, the prosecutor accused defendant's counsel of intimidating the two witnesses for the state. The trial court then conducted an inquiry into these allegations. Defendant's attorney related that a private investigator, working for defendant, had previously interviewed Dwight and Janice Orr, and had discovered that their statements concerning the alleged incident were inextricably entangled with admissions of unlawful drug usage, drug possession, and drug trafficking. Defendant's attorney apparently told Dwight and Janice Orr that their statements were incriminating and that they may want to speak to an attorney with respect to their Fifth Amendment considerations. Defense counsel, on his own initiative, located a public defender and expressed a concern for the Fifth Amendment rights of the witnesses and suggested that the public defender might want to talk to them. Defense counsel then introduced the public defender to the witnesses and the public defender asked the witnesses if they wished to speak to an attorney. At this time, the prosecutor became aware of the discussions and brought the matter to the attention of the trial court.

Upon hearing of the matter, the trial judge admonished defense counsel and informed him that he would turn the record of the proceedings over to the Columbus Bar Association for an investigation into the allegation that defense counsel had intimidated the witnesses. Defense counsel then asked to have the state's witnesses come in to explain their version of the conversation so that a full record would exist. The prosecutor then discovered that the Orrs had left. Defense counsel stated that he had no intention of intimidating the witnesses nor did he suggest that they not testify. Rather, he stated that his intention was to resolve any Fifth Amendment problems prior to trial. Following this inquiry by the trial court, defense counsel moved to withdraw as trial counsel stating that the allegations of improper contact with the state's witnesses created a conflict of interest between trial counsel's desire to have the witnesses present, so as to avoid the appearance of impropriety, and that of defendant, who would be much better served had the state's witnesses not appeared. Defense counsel also stated that the accusations made by the prosecutor, and echoed by the trial court, would have a chilling effect upon his ability to cross-examine the state's witnesses. The trial court held that there existed no conflict and overruled defense counsel's request to withdraw from the case. Defendant also requested a different attorney but the trial court similarly denied defendant's request for a change of counsel.

Defendant argues that the net result of the accusations, although the complaint was ultimately dismissed by the Professional Ethics Committee of the Columbus Bar Association, intimidated defense counsel and prohibited cross-examination of the state's witnesses to the extent that it created a situation in which defendant was denied his right to effective assistance of counsel. Defendant argues that this assignment of error cannot be viewed in retrospect but must be reviewed in light of the circumstances at the time of defendant's trial.

It is well-settled that the Sixth Amendment guarantee of effective assistance of counsel is comprised of two distinct rights, the right to reasonably competent counsel, *McMann v. Richardson* (1970), 397 U.S. 759, 771, fn. 14, and the right to counsel's undivided loyalty. *Glasser v. United States* (1942), 315 U.S. 60, 70; *Wood v. Georgia* (1981), 450 U.S. 261, 271. Thus, counsel has both a duty to perform competently in representing his client and also to avoid conflicts of interest.

In the present case, defendant alleges that he was denied effective assistance of counsel based upon the apparent conflict of interest arising out of the preceding exchange. In *Strickland v. Washington* (1984), 466 U.S. 668, the United States Supreme Court held:

"*** [P]rejudice is presumed when counsel is burdened by an actual conflict of interest. *** Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts *** it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. *** Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.' ***" *Id.* at 692.

Usually, in cases alleging ineffective assistance of counsel based upon a conflict of interest, the conflict alleged exists between the interest of one defendant and the interest of another defendant who are each served by the same attorney. See, *e.g.*, *Cuyler v. Sullivan* (1980), 446 U.S. 335; *Holloway v. Arkansas* (1978), 435 U.S. 475; and *Glasser, supra*. However, a conflict of interest is not necessarily limited to those factual situations where one attorney simultaneously represents more than one defendant. Rather, the critical inquiry is whether trial counsel actively represented conflicting interests. *Cuyler, supra*, at 350.

In *State v. Bryant* (Oct. 18, 1985), Lucas App. No. L-84-249, unreported, the defendant claimed that he was deprived of effective assistance of counsel based upon an alleged conflict of interest. The defendant, who was indicted on two counts of aggravated murder, retained defense counsel who was subsequently indicted for trafficking in drugs. The state alleged that the illegal conduct charged in defense counsel's trafficking occurred when the defendant paid counsel's fee with cocaine allegedly stolen by the defendant from the homicide victims. The defendant claimed that there existed an actual conflict of interest as a result of his counsel's potential criminal

liability for conduct involving his own client. In addressing the defendant's claim, the Sixth District Court of Appeals held that its inquiry was three-fold. First, it was necessary to determine whether defense counsel actually represented conflicting interests; second, if defense counsel did in fact represent conflicting interests, it was necessary to determine whether such a conflict adversely affected counsel's performance so as to give rise to a presumption of prejudice; finally, if there was a conflict which resulted in an adverse effect, the court had to determine whether the defendant effectively waived such a conflict.

In reviewing the first prong as to whether a conflict actually existed, the court noted:

"The Code of Professional Responsibility, originally adopted by the Ohio Supreme Court on October 5, 1970, is binding upon all attorneys licensed to practice in Ohio. Gov. Bar R. IV(1). The Code specifically proscribes the representation of conflicting interests, in order to remove any impediment to counsel's fiduciary obligations to maintain undivided loyalty, to preserve attorney-client confidentiality, and to assure to each client competent representation.

"Canon 5 requires that an attorney exercise independent professional judgment on behalf of his client. Disciplinary Rule 5-105(A) specifically prohibits employment which may adversely affect an attorney's 'independent professional judgment' on behalf of another client. The Code does not explicitly refer to 'conflicting' interests, but describes the problem in Ethical Consideration 5-14, speaking in terms of clients with 'differing interests, whether such interests be conflicting, inconsistent, diverse, or otherwise discordant.' The Code, in essence, prohibits the representation of differing interests which may adversely affect an attorney's ability to exercise independent professional judgment." *Id.* at 5.

The court concluded that there indeed existed a conflict of interest arising out of the conduct alleged in the indictment of defendant's trial counsel. The court then addressed the question whether the conflict of interest which existed adversely effected defense counsel's performance so as to deprive the defendant of effective assistance of counsel. Following a review of the record, the court concluded that while there existed an actual conflict of interest, defendant had failed in his burden to demonstrate that that conflict adversely effected defense counsel's performance at trial. Relying upon the trial transcript, the court concluded that defense counsel had vigorously pursued his client's best interest and that while there existed the potential for ineffective assistance, defense counsel was never placed in the position of having to choose between his own interests and those of his client. Finally, the court concluded that as there existed no indication in the record that the conflict of interest impinged defense counsel's trial of the defendant's case, it need not determine whether the defendant had waived the potential conflict.

Applying the three-prong test applied in *Bryant, supra,* to the present case, we conclude that there did in fact exist a conflict between the interest of defense counsel and defendant, and that given the facts in the present case, there exists a presumption of prejudice. Following the trial court's decision not to allow defense counsel to withdraw, defense counsel responded:

"I still perceive myself as a potential witness as to the Orrs. And, quite frankly, I really wonder how you can reasonably expect in good faith, reasonably expect for me to cross examine them about why they left and what their motives are after you know what I have been accused of doing. I think you know that it's not - it's extremely difficult for me to represent my client in that in terms of what questions to ask on cross examination and all the other areas involved." (Tr. 56.)

Defense counsel also stated that the accusations made against him would have a chilling effect with respect to his cross-examination of the state's witnesses. Defense counsel's attorney also pointed out that the defense theory as to why the Orrs left the courthouse and were reluctant prosecution witnesses were relevant to defendant's theory of innocence. However, due to the conflict which existed, defense counsel refrained from inquiring into this area fearing that it would adversely effect the jury's perception of defense counsel in apparently advising the state's witnesses not to testify against defendant. Accordingly, we find that both the first and second prongs of the test enunciated in *Bryant, supra,* have been met in the present case. Finally, with regard to the third prong involving the waiver issue, we need not

address that issue nor, whether waiver of ineffective assistance of counsel is possible since in the present case both defense counsel and defendant requested that the trial court allow defense counsel to withdraw. As we find that there does exist a presumption of prejudice in the present case, defendant's first assignment of error is well-taken and is sustained. While our decision sustaining defendant's first assignment of error may render the remaining assignments of error moot, we nevertheless address those assignments pursuant to App. R. 12(A).

Defendant argues in his second assignment of error that there exists insufficient evidence to support his conviction for aggravated burglary. Defendant concedes that his conviction for aggravated burglary could, perhaps, be properly sustained under one or more legal theories based upon the application of the aggravated burglary statute; however, the jury was only charged with finding that defendant could be convicted of aggravated burglary based upon the fact that defendant trespassed in an occupied structure with the intent to commit the specific felony of felonious assault.

Defendant was convicted of aggravated burglary, a violation of R.C. 2911.11(A), which provides:

"No person, by force, stealth, or deception, shall trespass in an occupied structure, as defined in section 2909.01 of the Revised Code, or in a separately secured or separately occupied portion thereof, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony, when any of the following apply:

"(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;

"(2) The offender has a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code, on or about his person or under his control;

"(3) The occupied structure involved is the permanent or temporary habitation of any person, in which at the time any person is present or likely to be present."

Upon review of the record, we find that there exists sufficient evidence to support defendant's conviction of aggravated burglary. In *State v. Huffman* (1936), 131 Ohio St. 27, the Supreme Court recognized in paragraph four of the syllabus:

"The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person and it need not be. It must be gathered from the surrounding facts and circumstances under proper instructions from the court."

The evidence in the present case clearly demonstrates that defendant forcibly entered an occupied structure and further supports a finding that defendant intended to commit a felony therein. A reasonable inference may be drawn that defendant broke into the Orrs' house for the purpose of causing serious physical harm, at least, to Boyd, as well as Dwight Orr. Accordingly, we find defendant's second assignment of error not to be well-taken, and it is therefore overruled.

Defendant next argues in his third assignment of error that there existed insufficient evidence to support his conviction for kidnapping. Defendant argues that the evidence presented failed to demonstrate that the alleged victim was removed from the place where he was found for the purpose of terrorizing him or inflicting serious physical harm upon him.

R.C. 2905.01 provides, in pertinent part:

"(A) No person, by force, threat or deception *** shall remove another from the place where he is found or restrain him of his liberty, for any of the following purposes:

"***

"(3) To terrorize, or to inflict serious physical harm on the victim or another[.]"

Again, we find sufficient evidence to support defendant's conviction. Defendant broke into the Orrs' house, put a gun to Dwight Orr's throat, and ordered him outside. Based upon this record, we find defendant's third assignment of error not to be well-taken, and it is therefore overruled.

In his fourth assignment of error, defendant argues that it was error for the trial court to refuse to repeat the properly requested instruction in the trial court's general charge to the jury. In the present case, the trial court gave the jury some preliminary instructions prior to the start of the trial in opening statements which included instructions on the law of circumstantial evidence. After the evidence was presented and closing arguments were completed, the trial court again charged the jury but neglected to in-

struct on the law of circumstantial evidence. Defendant insists that since this entire case was based upon circumstantial evidence, it was error for the trial court to refuse to repeat the instruction which it had previously given.

Crim. R. 30(A) provides, in pertinent part: "*** At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. *** The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. The court need not reduce its instructions to writing."

It is clear that Crim. R. 30(A) requires that the trial court instruct the jury after the arguments are completed. Recently, in *State v. Comen* (1990), 50 Ohio St. 3d 206, the Supreme Court of Ohio held in paragraph two of the syllabus:

"After arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder. (Crim. R. 30[A], construed.)"

In the present case, prior to the start of trial and opening statements, the trial court gave the following preliminary instructions:

"Now in the absence of direct evidence, circumstantial evidence, by itself, may justify a finding of guilty if the circumstances are entirely consistent with the defendant's guilt and if the circumstances are wholly inconsistent with any reasonable theory of the defendant's innocence, and are so convincing as to exclude a reasonable doubt of the defendant's guilt.

"Now if the circumstances create inferences that are equally consistent with either innocence or guilt, such inferences must be resolved in favor of the defendant's innocence, because the defendant is always presumed innocent until his guilt is established beyond a reasonable doubt." (Tr. 68.)

After the evidence was presented and closing arguments were completed, the trial court again charged the jury but neglected to instruct on the law of circumstantial evidence. Defendant objected to this omission in the general charge. As the circumstantial evidence presented in the present case was relevant to those offenses with which defendant was charged, we find that it was error for the trial court not to instruct the jury in its general charge at the close of evidence. Accordingly, defendant's fourth assignment of error is well-taken and is sustained.

Finally, in his fifth assignment of error, defendant insists that the trial court erred in holding that certain evidence which was favorable to defendant was inadmissible. Defense counsel sought to prove that defendant was not involved in the incident but instead was accused as part of an extortion plot involving the Orrs and Boyd. Even if the incident did occur, defendant argues that it was against the penal interest of the Orrs and Boyd to reveal the true identity of the culprits because of their own involvement in drug trafficking. Defendant insists that the trial court's decision regarding the admissibility of evidence ignores the conspiratorial nature of the defendant's allegations.

We note that the Supreme Court has held that a trial court has broad discretion in the admission and inclusion of evidence and unless an appealing party demonstrates that the trial court has clearly abused its discretion and that that party has been materially prejudiced, a reviewing court should be slow to interfere. *State v. Hymore* (1967), 9 Ohio St. 2d 122. Upon review of the record, we find that defendant has failed to clearly demonstrate that the trial court has abused its discretion in excluding the evidence of the alleged conspiracy. We note that the testimony which defendant sought to elicit is likely to constitute hearsay, which the trial court would be proper in ruling inadmissible. Nevertheless, defense counsel was permitted to present this theory to the jury through his cross-examination of Janice Orr. As we find no abuse of discretion, we conclude that defendant's fifth assignment of error is not well-taken and is overruled.

Based on the foregoing, defendant's first and fourth assignments of error are well-taken and are sustained. Defendant's second, third, and fifth assignments of error are not well-taken and are overruled. The judgment of the trial court is hereby reversed, and the cause is remanded for further proceedings consistent with the law and this opinion.

*Judgment reversed and
cause remanded.*

BRYANT and FAULKNER, J.J., concur.

FAULKNER, J., of the Hardin County Court of Common Pleas, sitting by assignment in the Tenth Appellate District.