DECISION AND JUDGMENT ENTRY
{¶ 1} Skylar Ridgway, Jr. appeals the Washington County Court of Common Pleas' decision finding him guilty of burglary, a second-degree felony in violation of 2911.12(A)(1). Ridgway contends that the trial court erred when it denied his motion for acquittal on the burglary charge despite the State's failure to prove that he intended to steal anything from the victims' house. Because the jury may infer an accused's intent from his actions, and the State produced evidence that Ridgway acted in a manner consistent with someone having the purpose to commit a theft offense, we disagree. Additionally, Ridgway asserts that his trial counsel did not provide him with effective assistance when she failed to object, after the court denied her motion in limine, to the State's introduction of evidence that Ridgway committed a prior burglary. Because counsel's decision not to object may have been part of a sound trial strategy, we disagree. Accordingly, we overrule each of Ridgway's assignments of error and affirm the judgment of the trial court.
 I. {¶ 2} The Williams family lives in a rural area in Washington County. Their home sits approximately 100 yards from the roadway and is surrounded by fields and woods. A big red barn and a double garage sit across the street from the Williams' driveway.
 {¶ 3} During the afternoon of December 2, 2001, Mrs. Williams and her son went shopping while Mr. Williams stayed home. Mrs. Williams left the garage door open when she left. Ridgway approached the home, but did not go to the front door. Instead, Ridgway walked into the open garage and knocked on the kitchen door.
 {¶ 4} Mr. Williams thought he heard a knock at the door, but did not answer it, as he was not feeling well and was lying down in his bedroom. Mr. Williams then heard footsteps, and called out to see if his son had come home. When no one responded, Mr. Williams got up and looked in the hallway, but did not see anyone. He then sat down on his bed. Two minutes or less after that, Mr. Williams observed the bill of Ridgway's hat protruding from along the edge of the doorframe.
 {¶ 5} Mr. Williams jumped up, pulled a gun from under his bed, and confronted Ridgway. Ridgway told Mr. Williams that he just wanted to use the bathroom. As Mr. Williams backed Ridgway out the door, Ridgway kept saying that he only wanted to use the bathroom. Mr. Williams replied that someone simply needing to use a bathroom would have gone to the red barn across the street. When Ridgway reached the kitchen door, he ran away. Mr. Williams called the police.
 {¶ 6} Police spotted Ridgway a short time later, although he had changed his shirt since the confrontation with Mr. Williams. When Ridgway saw Deputy Stackpole exit his patrol car, Ridgway ran. Ridgway continued to run even after Deputy Stackpole identified himself and ordered Ridgway to stop.
 {¶ 7} Later that same day, officers apprehended Ridgway, took him into custody, and read him his Miranda rights. Ridgway initially denied being in the Williams' home. After Ridgway admitted that he had entered the Williams' home, he also admitted that if he had remained in the house long enough and had the opportunity to do so, he probably would have taken something of value.
 {¶ 8} During the follow-up investigation of the crime, Mr. Williams signed a form provided by Deputy Stackpole. With the form, Mr. Williams indicated that he did not wish to prosecute Ridgway. Mr. Williams thought that perhaps Ridgway was young and didn't know what he was doing at the time of the crime. However, Mr. Williams changed his mind when Deputy Stackpole informed him that since Ridgway had gone AWOL from the military a few months before, he had broken into another home and was suspected of breaking into some cars.
 {¶ 9} The Washington County Grand Jury indicted Ridgway on one count of burglary. Prior to trial, Ridgway's attorney filed a motion in limine seeking to prevent the State from introducing evidence of Ridgway's conviction for burglarizing a home in Washington County on October 7, 2001. The trial court found that the prior conviction was admissible as proof of Ridgway's motive, and therefore, denied the motion.
 {¶ 10} At trial, Mr. and Mrs. Williams testified that, in order to reach the bedrooms in their home from the kitchen door, a person must pass the main bathroom. The Williams keep the door to the main bathroom open unless it is in use, and a large skylight illuminates the bathroom. Additionally, Mr. Williams testified that after Ridgway left his home, he noticed that someone had used, but did not flush, the toilet in the half-bath located off of his son's bedroom. Mr. Williams stated that sometimes his son does not flush the toilet, and that he did not know who used the toilet last.
 {¶ 11} On cross-examination, Ridgway's counsel presented Mr. Williams with the non-prosecute form that he signed shortly after the crime. Mr. Williams agreed that he initially did not wish to prosecute Ridgway. He testified that he changed his mind only after learning about Ridgway's prior burglary.
 {¶ 12} The State then presented the testimony of Detective Sirianni and Deputy Stackpole. Detective Sirianni testified regarding Ridgway's flight, apprehension, and interrogation. Detective Sirianni also testified that, on a prior occasion, he had interviewed Ridgway with regard to a home burglary that occurred in Washington County less than two months prior to the Williams' incident. Detective Sirianni stated that the trial court convicted Ridgway of the prior burglary. Ridgway's counsel did not object to the State's questions regarding Ridgway's prior burglary conviction. Ridgway did not call any witnesses to testify on his behalf.
 {¶ 13} The jury found Ridgway guilty of burglary in violation of R.C. 2911.12(A)(1). Ridgway timely appeals, asserting the following assignments of error: "I. The trial court erred in denying Mr. Ridgway's motion for acquittal because there was insufficient evidence to prove that he intended to commit a theft offense. II. Mr. Ridgway's conviction for burglary under R.C. 2911.12(A)(1) is against the manifest weight of the evidence. III. Trial counsel was ineffective for failing to object to the introduction of evidence about Mr. Ridgway's prior burglary conviction."
 II. {¶ 14} In his first assignment of error, Ridgway contends that the trial court erred in overruling his Crim.R. 29 motion for acquittal based upon the State's failure to produce sufficient evidence against him. Specifically, Ridgway contends that the State did not present evidence that he entered the Williams' home with the purpose to commit a theft offense.
 {¶ 15} When we review the sufficiency of the evidence, we must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing Jackson v. Virginia
(1979), 443 U.S. 307.
 {¶ 16} Pursuant to R.C. 2911.12(A)(1), a person commits second-degree felony burglary when he trespasses, by force, stealth or deception, in an occupied structure "with the purpose to commit a theft offense in the structure." Because the statute defining burglary requires that it be committed with a particular intent, intent is a material element of the crime that the State must prove beyond a reasonable doubt. State v. Huffman (1936), 131 Ohio St. 27.
 {¶ 17} "The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person, and it need not be. It must be gathered from the surrounding facts and circumstances under proper instructions from the court." State v. Johnson (1978),56 Ohio St.2d 35, quoting Huffman, supra. In particular, "it is difficult to ascertain the intent of a person in forcibly entering an occupied structure if he is apprehended before he commits any overt act inside the premises." State v. Flowers (1984), 16 Ohio App.3d 313, 315, overruled on other grounds by State v. Fontes (2000), 87 Ohio St.3d 527. In such a situation, unless circumstances giving rise to a different inference are present, a reasonable inference arises that the individual entered the structure with the intent to commit a theft offense. Id.; State v.Levingston (1995), 106 Ohio App.3d 433, 436. Even when an accused offers an innocent explanation for his conduct, "a jury is not required to accept a competing inference of innocence if it may infer guilt, beyond a reasonable doubt, from the same circumstances." Levingston at 437 (jury not required to accept defendant's explanation that he was looking for a place to get warm, to sleep, and to think); Flowers (jury not required to accept defendant's explanation that he entered dwelling to commit voryerism); State v. Tierney, Cuyahoga App. No. 78847, 2002-Ohio-2607 (jury not required to accept defendant's explanation that he was looking for a bathroom).
 {¶ 18} In this case, Ridgway attempted to explain his presence in the Williams' home by claiming that he merely needed to use the bathroom. However, several circumstances indicate that his explanation is not plausible. First, common sense dictates that one does not enter a stranger's residence without permission merely in order to use the bathroom. Second, the Williams' home is located far off the road, but a large barn and garage sit near the street across from the Williams' driveway. Third, Ridgway walked past the main bathroom in the home, though the door was open and the bathroom was well lit by a skylight, and proceeded to the bedroom area. Fourth, Williams admitted that he probably would have taken items of value from the home if he had the opportunity.
 {¶ 19} Because this evidence admitted at trial, if believed, would convince the average mind of Ridgway's guilt beyond a reasonable doubt, we find that sufficient evidence supports Ridgway's conviction. Accordingly, we overrule Ridgway's first assignment of error.
 III. {¶ 20} In his second assignment of error, Ridgway contends that his conviction is contrary to the manifest weight of the evidence. Even when a verdict is supported by sufficient evidence, an appellate court may nevertheless conclude that the verdict is against the manifest weight of the evidence because the test under the manifest weight standard is much broader than that for sufficiency of the evidence. State v. Banks
(1992), 78 Ohio App.3d 206, 214; State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 21} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. State v. Garrow (1995),103 Ohio App.3d 368, 370-71; Martin, 20 Ohio App.3d at 175. "A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." State v. Eskridge
(1988), 38 Ohio St.3d 56, paragraph two of the syllabus.
 {¶ 22} Here, we have reviewed the entire record, weighed the evidence and all reasonable inferences, and considered the credibility of the witnesses. We cannot say that the jury, in resolving conflicts in the evidence, lost its way and created a manifest miscarriage of justice. Specifically, substantial evidence supports the inference that Ridgway entered the Williams' home to commit a theft offense, instead of Ridgway's claim that he merely needed to use the bathroom. Therefore, Ridgway's conviction is not against the manifest weight of the evidence.
 {¶ 23} Accordingly, we overrule Ridgway's second assignment of error.
 IV. {¶ 24} In his third assignment of error, Ridgway contends that he did not receive effective assistance of counsel in the trial court. Specifically, Ridgway contends that his trial counsel was ineffective in that she failed to object at trial to the State's presentation of evidence regarding his prior conviction.
 {¶ 25} In State v. Ballew (1996), 76 Ohio St.3d 244, 255, the Ohio Supreme Court stated that "reversal of a conviction or sentence based upon ineffective assistance requires (a) deficient performance, "errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment"; and (b) prejudice, "errors * * * so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington (1984), 466 U.S. 668, 687.
 {¶ 26} As to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland at 689. Furthermore, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. The United States Supreme Court has noted that "there can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial." United States v. Hasting (1983), 461 U.S. 499,508-509.
 {¶ 27} Here, Ridgway's counsel filed a motion in limine seeking to prevent the State from introducing evidence of his prior burglary conviction pursuant to Evid.R. 404(B). The State successfully argued that the prior conviction was relevant to prove Ridgway's intent, because the prior burglary was similar in time, mode, and situation to the Williams incident. After learning that her motion in limine was denied, Ridgway's counsel confirmed that the court would allow her to introduce the form Mr. Williams signed in which he stated that he did not wish to prosecute Ridgway. The State objected on the basis of relevancy, and noted that if Ridgway was permitted to introduce the non-prosecute form, then Ridgway would open the door to introduce Ridgway's prior conviction for another purpose, as the State would question Mr. Williams regarding why he changed his mind and decided to prosecute.
 {¶ 28} At trial, Ridgway's counsel made the tactical decision to cross-examine Mr. Williams with the non-prosecute form. This decision might be considered sound trial strategy, even though it opened the door to testimony regarding knowledge of Ridgway's prior conviction, because it revealed the victim's initial uncertainty about Ridgway's intent. Consequently, any further objection by Ridgway's counsel would have been fruitless and only would have served to draw the jury's attention to this evidence. Thus, Ridgway's counsel employed sound trial strategy, and we find that her failure to object to the introduction of evidence regarding Ridgway's prior conviction did not constitute ineffective assistance of counsel.
 {¶ 29} Accordingly, we overrule Ridgway's final assignment of error, and we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec.2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Evans, P.J. and Harsha, J.: Concur in Judgment and Opinion.