[Cite as *State v. Ramey*, 2020-Ohio-1572.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                        |   | JUDGES:                      |
|------------------------|---|------------------------------|
| STATE OF OHIO          | : | Hon. William B. Hoffman, P.J. |
|                        | : | Hon. W. Scott Gwin, J.       |
| Plaintiff-Appellee     | : | Hon. Patricia A. Delaney, J. |
|                        | : |                              |
| -vs-                   | : |                              |
|                        | : | Case No. 2019CA0013          |
| ERIC R. RAMEY          | : |                              |
|                        | : |                              |
| Defendant-Appellant    | : | OPINION                      |


CHARACTER OF PROCEEDING:     Criminal appeal from the Coshocton County
                             Court of Common Pleas, Case No. 18CR0207


JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      April 17, 2020

APPEARANCES:


For Plaintiff-Appellee                  For Defendant-Appellant

JASON GIVEN                             KORI GATTERDAM
Coshocton County Prosecuting Attorney   ERIK P. HENRY
318 Chestnut Street                     280 Plaza, Ste. 1300
Coshocton, OH 43812                     280 N. High St.
                                        Columbus, OH 43215

*Gwin, J.,*

{¶1} Defendant-appellant Eric R. Ramey ["Ramey"] appeals his conviction and sentence after a jury trial in the Coshocton County Court of Common Pleas.

*Facts and Procedural History*

{¶2} On September 28, 2018, Detective Dave Stone of the Coshocton County Sheriff's Office was conducting a drug trafficking investigation at the Downtown Motel in Coshocton, Ohio. The investigation targeted Tiffany Wiggins ("Wiggins") and an unknown male. As part of the investigation, the Sheriff's Office employed a paid confidential informant, Floyd Lewis ("Lewis"). Lewis' contract with the Sheriff's Office began July 20, 2016, and the Sheriff's Office paid him $200—$100 at the time of each buy and $100 upon completion of the case, i.e., after trial.

{¶3} On September 29, 2018, Detective Stone gave Lewis a concealed video recorder and $150 in buy money. Under the surveillance of Detective Stone and Detective Tim Bethel, Lewis drove his vehicle to the Downtown Motel and entered Room No. 2. After completion of the controlled buy, Lewis exited the motel room, and Detective Stone recovered from Lewis two clear bags containing methamphetamine. State's Exhibit 3.

{¶4} Detectives continued to monitor the motel room, and saw an unknown male, later identified as Ramey, exit the room. Detectives followed Ramey and apprehended him in an alley. Detectives found in Ramey's possession a clear bag containing methamphetamine, as well as $80 of the buy money Lewis used during the controlled buy. State's Exhibit 4; State's Exhibit 5.

{¶5} After the controlled buy, Detective Stone applied for, and a judge granted, a search warrant for the motel room. Detective Stone acknowledged that the sale from Wiggins to Lewis constituted the predicate for the warrant. After the arrests of both Wiggins and Ramey, the detectives executed the warrant and searched Room No. 2.

{¶6} Detectives seized six bags of methamphetamine from inside a gray LG cell phone box found in a dresser drawer. One of the bags contained a "ball" or a larger amount of methamphetamine that would typically be broken down into smaller amounts for sale. State's Exhibit 14. The remaining five bags each contained a smaller amount of methamphetamine typical of drug buys. Exhibit 9 was a bag containing methamphetamine that had "3.5" handwritten on the front of the bag. Exhibit 10 was a bag containing methamphetamine that had "3.6" written on it. Exhibit 11 was another bag of methamphetamine that had "3.5" written on it. Exhibit 12 was a bag of methamphetamine that had "3.2" written on it. Id. Exhibit 14 was a large bag of methamphetamine. Exhibit 13 was then introduced as a bag of methamphetamine located in Room No. 2 with State's exhibits 9, 10, 11, 12, and 14.

{¶7} Detective Stone testified that these exhibits were indicative of drug trafficking. He testified that the smaller bags are what is typically sold and packaged from the larger bag. State's Exhibit 16 was introduced as small baggies typically used for drug trafficking recovered from the gray box. Exhibit 17 and 18 were more small baggies recovered from the gray box. State's Exhibit 19 and 20 were introduced as other small baggies consistent with drug trafficking recovered from the gray box. Exhibit 15 was introduced as the gray box located in the dresser. State's Exhibit 22 was introduced

as a digital scale typically used to weigh drugs. State's Exhibit 21 was introduced as a photograph of the items located in the gray box.

{¶8} Detectives further uncovered during the search of the motel room $40 in buy money on the north side of the bed (State's Exhibit 23), also on the north side of the bed two glass smoking pipes consistent with smoking methamphetamine (State's Exhibits 24-25), an empty (State's Exhibit 26) as well as a full syringe (State's Exhibit 27), and mail purportedly belonging to Ramey (State's Exhibit 28). Detective Stone also noted seeing male clothing and hygiene products, as well as two toothbrushes in the bathroom. Detectives also found a bag of methamphetamine inside Wiggins' purse. State's Exhibit 29.

{¶9} On cross-examination, Detective Stone noted they could not locate $30 of the buy money. Detective Stone also acknowledged that if a confidential informant violated the terms of the contract by using illegal drugs or committing criminal acts, the Sheriff's Office would terminate the contract. Detective Stone had no knowledge of Lewis violating the contract from July 20, 2016, through September 29, 2018. Detective Stone testified on cross examination that the gray box was for an LG cell phone; however, he did not know to whom the box belonged. Detective Stone acknowledged that no one observed Ramey directly selling drugs to anyone. Finally, Detective Stone admitted making no attempt to identify the handwriting found on the bags of methamphetamine marked as State's Exhibits 9-12, or to test any of the evidence for DNA.

{¶10} The confidential informant, Floyd Lewis testified he was presently incarcerated for a matter occurring in Muskingum County, Ohio. Lewis also admitted a prior robbery conviction.

{¶11} Lewis admitted that for the past few years he has made his living by working as a confidential informant for the Coshocton County Sheriff's Office. Lewis detailed the controlled buy on September 29, 2018. State's Exhibit 30 was introduced as the video/audio recording of the buy from the device that Lewis wore during the controlled buy. Lewis testified that at first he had tried to buy methamphetamines and heroin; however, they had just sold out of heroin. Lewis said that he gave Wiggins the money and Wiggins gave him the drugs. Lewis testified that when he requested a large amount of drugs to purchase, Wiggins got permission from Ramey to sell that amount. Ramey told Wiggins that Lewis could purchase two bags of methamphetamine for $150. Twice Ramey told Wiggins the deal was okay.

{¶12} Lewis acknowledges being at the Downtown Motel the night before and saw Wiggins; he did not see Ramey. On cross-examination, Lewis admitted he did not honor his contract, including by using drugs on his own. Lewis stated the night before, he bought $15 worth of methamphetamine, fentanyl, or heroin for his girlfriend. The following morning, Lewis contacted Detective Bethel of the Sheriff's Office and advised that he could buy from Wiggins and "we proceeded from there." Lewis corrected himself that he might not have bought directly from Ms. Wiggins the night before but he did find out she was the one who had "the weight."

{¶13}  Wiggins testified that she was currently incarcerated in prison based on her involvement in this case. Wiggins had four other drug trafficking convictions, as well as a felony theft conviction.

{¶14}  Wiggins testified that she and Ramey began staying at the Downtown Motel on September 28, 2018. Wiggins said that when Lewis knocked, Ramey gave Wiggins permission to let Lewis into the room.  When Lewis came into the room, there was approximately seven grams of methamphetamine in two baggies in the open on a nightstand between the beds.  Wiggins testified that it was Ramey's drugs and she was assisting in selling them. Ramey gave her permission to sell both bags and watched her prepare and sell the drugs.  This was by way of an affirmation nod.  Ramey approved the purchase price of $150.  Wiggins testified that she gave the $150 to Ramey. Wiggins acknowledged that the gram of methamphetamine in her purse was given to her by Ramey for personal use.

{¶15}  Wiggins testified that the night before, she went to Walmart and bought a pre-paid cell phone with her money, not Ramey's.  Wiggins identified State's Exhibit 15 as the gray box in which the phone had been packaged.  Wiggins claimed she took the phone out of the gray box that morning, after Lewis came but before her arrest and the search of the room. Wiggins denied placing any items into the box. Wiggins testified no one else came to the room after Lewis left and before Ramey left. Wiggins claimed Ramey left the room to sell someone methamphetamine at the library. When Wiggins left the room to take the trash out, detectives arrested her.

{¶16}  Wiggins did acknowledge how both she and Ramey were addicts, and both of them used drugs while in the motel room, including the previous night.  In fact, when

detectives interviewed Wiggins after her arrest, Wiggins was still high. Wiggins further stated Ramey rented the room because she did not possess any identification.

{¶17} On the video, Wiggins acknowledging hearing Lewis saying 130 and also "I will owe you 20." Wiggins testified Lewis did not have the whole $150. When asked why detectives only located $120, Wiggins stated that was all Lewis gave her.

{¶18} Sarah Dobbs, a forensic scientist employed by the Bureau of Criminal Investigation ["BCI"] in the Richfield office, testified last for the state. The parties stipulated to Ms. Dobbs' qualifications as an expert witness. Ms. Dobbs examined the methamphetamine submitted in this case, the results of which were reflected in her report marked as State's Exhibit 31. According to Ms. Dobbs, State's Exhibit 4 weighed 6.79 grams; State's Exhibits 9, 10, 11, 12, and 14 weighed a combined 28.17 grams; State's Exhibit 13 weighed 3.45 grams; and State's Exhibit 29 weighed 1.77 grams. Ms. Dobbs testified the bulk amount of methamphetamine is 3 grams, and the combined weight of all the drugs in this case fell within the range of 15 grams to 150 grams, i.e., between 5 times and 50 times bulk.

{¶19} The parties stipulated to the chain of custody of the state's case; stipulated to State's Exhibit 32, a report from the Bureau of Criminal Investigation, confirming that State's Exhibit 3 is methamphetamine and weighed 6.06 grams; stipulated that Room 2 of the Downtown Motel is located within the vicinity of a school; and stipulated to Ms. Dobbs' expertise.

{¶20} After the close of evidence, Ramey requested an instruction for the lesser included offense of Aggravated Possession of Drugs in an amount greater than bulk

amount but less than five times the bulk amount, i.e. the amount of drugs found on Ramey's person when he was arrested.

{¶21} The jury found Ramey guilty of Aggravated Trafficking in Drugs, a violation of R.C. 2925.03(A)(2), (C)(1)(d), a felony of the first degree. The trial court proceeded to sentencing. Ramey was sentenced to a mandatory term of imprisonment for eleven years. The trial court noted that in imposing a maximum sentence that the offense was the worst form of the offense. Specifically, the trial court noted the amount of methamphetamine, the digital scales, and the prepared bags with weights written on them. The trial court noted that Ramey was prepared to introduce a large amount of methamphetamine into the community at a rapid pace. The court further noted Ramey had a prior felony conviction for trafficking in drugs out of Wayne County, Ohio and a prior theft conviction. The trial court further noted that Ramey had a prior federal conviction for counterfeit United States currency and was wanted by federal authorities for probation or parole violations related to that offense.

*Assignments of Error*

{¶22} Ramey raises three Assignments of Error,

{¶23} "I. APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

{¶24} "II. THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED A JUDGMENT OF CONVICTION BASED ON INSUFFICIENT EVIDENCE AND AGAINST THE MANIFEST

WEIGHT OF THE EVIDENCE IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS.

{¶25} "III.   THE TRIAL COURT UNLAWFULLY ORDERED APPELLANT TO SERVE THE MAXIMUM SENTENCE FOR HIS CONVICTION, IN VIOLATION OF HIS RIGHTS TO DUE PROCESS GUARANTEED BY SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."

I.

{¶26} In his First Assignment of Error, Ramey argues that he was denied effective assistance of counsel.  Specifically, Ramey contends, 1). Trial counsel was ineffective because counsel failed to voir dire prospective jurors regarding their feelings regarding drug use; 2).  Failed to object to the state introducing other acts evidence of Wiggins; and 3). Trial counsel failed to object to the prosecutor's improper statement in closing argument.

**STANDARD OF APPELLATE REVIEW.**

{¶27} To obtain a reversal of a conviction based on ineffective assistance of counsel, the defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687–688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693(1984).  A defendant's failure to satisfy one prong of the Strickland test negates a court's need to consider the other.  *Strickland* at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699; *State v. Madrigal*, 87 Ohio St.3d 378, 2000-Ohio-448, 721 N.E.2d 52 (2000).

**{¶28}**  In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances."  *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064.  At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential."  *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064.

## ISSUE FOR APPEAL.

*A. Whether there is a reasonable probability that trial counsel's objections would have been sustained and whether there is a reasonable probability that the jury would have found Ramey not guilty if the objections had been sustained.*

### 1). Failure to voir dire on issue of drugs.

**{¶29}**  Ramey contends, "defense counsel needed to uncover prospective jurors' prejudices and biases as to drugs so he would know whether the juror could be fair to his client.  Jurors personally affected by drug use or with family members affected by drug use obviously would view the facts of this case in a skewed manner.  Defense counsel intentionally left on the panel jurors who have in some way been so negatively impacted by drugs that they could not be fair and impartial."  Appellant's Brief at 11.

**{¶30}**  In the case at bar, the state inquired of the jurors during voir dire as follows,

Let's talk about the alleged offense.  It's a single count.  We are talking about this because sometimes the offense itself will bring up biases, make it so you can't be objective while sitting as a juror.  The offense in this case revolves around the trafficking or specifically the intended distribution

of methamphetamine.   Does that subject matter cause anyone concern about how they could objectively weigh the evidence in this case?

T. at 26.  None of the jurors answered in response to the state's inquiry.

{¶31}  Defense counsel inquired as follows,

I want to be just a little bit more specific since this case involves drugs.  Very many of you on questionnaires listed at some point in your life you were the victim of a crime.  And drugs has been a problem that's increased in recent years to the point that many crimes, whether they are a drug crime or not, are somehow tied to drugs.  It's one of those things that's in the back of people's minds that I find when they hear the case is about drugs, they frown, and its unpleasant topic to them and within their own family this may be something that has been a scourge that they have personally experienced.

I don't want to ask you about the particularities of any of the crimes that you have been victim of or that there has been drug problems in your family particular to that.  I think that's private and you can keep it to yourself.  But now that I have put a little bit of focus on it, is there anybody here that feels that maybe they are not the best person to sit in judgment on a case like there?  And I will turn the question a little more specific, and I would ask those of you back here to remember this one for yourselves when you come up -- if you come up here to the box in a little bit.  Is there any -- if you found yourself in Mr. Ramey's shoes today, is there any reason why you wouldn't want yourself sitting in judgment on this case?  Thank you.

T. at 31-31.

{¶32} It is a well-established principle of law that "[t]he conduct of voir dire by defense counsel does not have to take a particular form, nor do specific questions have to be asked." *State v. Cornwell*, 86 Ohio St.3d 560, 568, 1999–Ohio–125, 715 N.E.2d 1144, *citing State v. Evans*, 63 Ohio St.3d 231, 247, 586 N.E.2d 1042(1992). Ohio courts "have recognized that counsel is in the best position to determine whether any potential juror should be questioned and to what extent." *State v. Murphy*, 91 Ohio St.3d 516, 539, 2001–Ohio–112, 747 N.E.2d 765, *citing State v. Bradley*, 42 Ohio St.3d 136, 143–144, 538 N.E.2d 373(1989).

{¶33} "The fact that defense counsel did not decide to ask additional questions or to press every single potential juror on this issue—or to inquire about specific mitigating factors—is reasonable as a matter of strategy. *See Murphy*, 91 Ohio St.3d at 539, 747 N.E.2d 765." *State v. Mammone,* 139 Ohio St.3d 1051, 2014-Ohio-1942, 13 N.E.3d 1051, ¶156.

{¶34} In the case at bar, both the state and the defense gave the jurors the opportunity to discuss how their views on drugs could affect their ability to be fair and impartial jurors. The trial court oversaw the voir dire and the record of voir dire indicates that the jurors could render a fair and impartial verdict.

{¶35} Even if counsel's performance at voir dire had been deficient, Ramey cannot establish prejudice under *Strickland.* He has failed to establish a reasonable probability that but for counsel's allegedly deficient performance at voir dire, the result of the trial would have been different. *See, e.g., State v. Adams*, 103 Ohio St.3d 508, 2004-

Ohio-5845, 817 N.E.2d 29, at ¶ 67. *State v. Mammone,* 139 Ohio St.3d 1051, 2014-Ohio-1942, 13 N.E.3d 1051, ¶157.

> ### 2). Failure to object to "other acts" evidence of Tiffany Wiggins.

**{¶36}** Ramey next contends, "During the testimony of confidential informant Floyd Lewis, Lewis mentioned trying to buy heroin from Wiggins. Wiggins purportedly told Lewis she had already sold the last bit of heroin. Defense counsel failed to object to this other acts testimony regarding uncharged criminal conduct." Appellant's Brief at 11(references to the transcript omitted).

**{¶37}** In the case at bar, the defense argued that both Wiggins and Ramey are drug addicts. T at 190. The clear defense strategy was that Wiggins, not Ramey was the drug dealer. T. at 190-191. Defense counsel noted that Wiggins was a "four time convicted drug trafficker." T. at 193.

**{¶38}** A defendant has no constitutional right to determine trial tactics and strategy of counsel. *State v. Cowans*, 87 Ohio St.3d 68, 72, 717 N.E.2d 298(1999); *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 150; *State v. Donkers,* 170 Ohio App.3d 509, 867 N.E.2d 903, 2007-Ohio-1557, ¶ 183(11th Dist.). Rather, decisions about viable defenses are the exclusive domain of defense counsel after consulting with the defendant. Id. When there is no demonstration that counsel failed to research the facts or the law or that counsel was ignorant of a crucial defense, a reviewing court defers to counsel's judgment in the matter. *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189(1980), citing *People v. Miller*, 7 Cal.3d 562, 573-574, 102 Cal.Rptr. 841, 498 P.2d 1089(1972); *State v. Wiley*, 10th Dist. No. 03AP-340, 2004- Ohio-1008 at ¶ 21.

{¶39} Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel. *State v. Phillips*, 74 Ohio St.3d 72, 85, 1995–Ohio– 171. Even if the wisdom of an approach is questionable, "debatable trial tactics" do not constitute ineffective assistance of counsel. Id. "Poor tactics of experienced counsel, however, even with disastrous result, may hardly be considered lack of due process * * *." *State v. Clayton*, 62 Ohio St.2d 45, 48, 402 N.E.2d 1189 (1980)(*quoting United States v. Denno,* 313 F.2d 364 (2nd Cir.1963), *certiorari denied* 372 U.S. 978, 83 S.Ct. 1112, 10 L.Ed.2d 143.

{¶40} Evidence that Wiggins may have sold drugs to Lewis at a previous time fits with the defense strategy that Wiggins was the drug dealer. Thus, a reasonable trial strategy supported defense counsel's decision not to object.

{¶41} Even if trial counsel's failure to object to the other acts evidence would have been deficient, the prejudice inquiry requires Ramey to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. Ramey has not met this burden and this Court is not convinced that Ramey would have been found not guilty even if the evidence had been excluded.[1]

*3). Failure to object to Prosecutors' appeal to the passion and prejudice of the jury during closing argument.*

{¶42} Ramey next argues that his trial counsel was ineffective because defense counsel failed to object to the prosecutor improperly asking the jury to address a community drug problem. (Appellant's Brief at 12). Ramey does not argue that the

---

[1] Ramey's sufficiency and manifest weight of the evidence arguments will be addressed in Ramey's Second Assignment of Error, infra.

comments made by the state during closing argument amounted to prosecutorial misconduct.

{¶43} A prosecutor is entitled to a certain degree of latitude in closing arguments. *State v. Liberatore*, 69 Ohio St. 2d 583, 589, 433 N.E.2d 561(1982). Thus, it falls within the sound discretion of the trial court to determine the propriety of these arguments. *State v. Maurer,* 15 Ohio St. 3d 239, 269, 473 N.E.2d 768(1984). A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. *State v. Benge*, 75 Ohio St.3d 136, 141, 1996-Ohio-227. Furthermore, "[i]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431(1974).

{¶44} Comments made to incite fear; prejudice and/or passion in the jury require reversal. *Viereck v. United States*, 318 U. S. 236, 247(1943); *State v. Williams*, 23 Ohio St. 3d 16, 20(1986).

{¶45} Ramey cites the following statement made by the state in the rebuttal portion of its closing argument as the only ground for his argument that his trial counsel was ineffective,

> Now, Mr. Mullen got up here and talked about rules. Rules constitute all the way back to the founding of our country. And he is right. There are rules that the State of Ohio has to follow, that the government has to follow in serious matters such as this. And Mr. Ramey is availing himself of those rules; however, we as citizens have rules, too. And that rule is, one of them, is you don't traffic this poison in communities. That's a rule. And when you

do and when it can be proven beyond a reasonable doubt, you are guilty of

it, that's a rule.  So the rules cut both ways.

T. at 199-200.

{¶46}  We find the statements cited by Ramey in support of his argument do not rise to the level of inciting fear, prejudice, and/or passion.  "The prosecutors' argument did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent…." *Darden v. Wainwright* (1986), 477 U.S. 168, 181-182, 106 S.Ct. 2624, 2472.

{¶47}  "'The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'"  *State v. Fears*, 86 Ohio St.3d 329, 347, 715 N.E.2d 136(1999), *quoting State v. Holloway* (1988), 38 Ohio St.3d 239, 244, 527 N.E.2d 831(1988).  A defendant must also show that he was materially prejudiced by the failure to object.  *Holloway*, 38 Ohio St.3d at 244, 527 N.E.2d 831.  *Accord, State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶233.

{¶48}  We find no error in the prosecutor's comments.  Therefore, Ramey's trial counsel was not ineffective in failing to object.

### 4). Cumulative effect.

{¶49}  Finally, Ramey alleges that the errors outlined in his previous arguments amount to cumulative error requiring reversal.

{¶50}  In *State v. Brown*, 100 Ohio St.3d 51, 2003–Ohio–5059, 796 N.E.2d 506, the Ohio Supreme Court recognized the doctrine of cumulative error.  However, as explained in *State v. Bethel*, 110 Ohio St.3d 416, 2006–Ohio–4853, 854 N.E.2d 150, ¶

197, it is simply not enough to intone the phrase "cumulative error." *State v. Sapp*, 105 Ohio St.3d 104, 2004–Ohio–7008, 822 N.E.2d 1239, ¶ 103.

{¶51} Here, Ramey cites the doctrine of cumulative error, lists or incorporates the previous arguments, and gives no analysis or explanation as to why or how the errors have had a prejudicial cumulative effect. Thus, this argument has no substance under *Bethel* and *Sapp*.

{¶52} Further, where we have found that the trial court did not err, cumulative error is simply inapplicable. *State v. Carter*, 5th Dist. No.2002CA00125, 2003–Ohio1313 at ¶ 37. As this case does not involve multiple instances of error, Ramey's argument is without merit.

### CONCLUSION.

{¶53} Trial counsel's conduct of voir dire on the issue of drugs was a matter of trial strategy and Ramey cannot point to prejudice resulting from counsel's decision.

{¶54} Ramey's trial strategy was to demonstrate that Wiggins, not Ramey, was the dealer of the drugs in question. Therefore, failure to object to testimony that Wiggins had sold drug or attempted to sell drugs on the night before this incident was a matter of trial strategy. Ramey can point to no prejudice from counsel's decision.

{¶55} The prosecutor's statements in closing argument were not improper; therefore, Ramey's trial counsel was not ineffective in failing to object.

{¶56} As this case does not involve multiple instances of error, Ramey's argument that the cumulative effect of the errors mandates reversal is without merit.

{¶57} Ramey's First Assignment of Error is overruled.

II.

{¶58} In his Second Assignment of Error, Ramey argues that there was insufficient evidence to convict him, and further Ramey contends that the jury's findings are against the manifest weight of the evidence.

**STANDARD OF APPELLATE REVIEW.**

*Sufficiency of the Evidence.*

{¶59} The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. __, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker,* 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson,* 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶60} When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus: *Walker,* at ¶30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney,* 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency

we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus (emphasis added); *Walker* at ¶31.  We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

### ISSUE FOR APPEAL

*A.    Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind of Ramey's guilt on each element of the crime of Aggravated Trafficking in Drugs beyond a reasonable doubt.*

{**¶61**} In this case, the indictment charged Ramey with violating R.C. 2925.03(A)(2), which provides: "(A) No person shall knowingly do any of the following: (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person."  The indictment further alleged Ramey violated R.C. 2925.03(C)(1)(d) because the controlled substance involved methamphetamine, a schedule II drug, in the amount exceeding five times the bulk amount but less than fifty times the bulk amount, and in the vicinity of a school.

{¶62} In the case at bar, the parties entered into four stipulations: (1) chain of custody was not a contested issue; (2) Sacred Heart Elementary School is within 1,000 feet of Room Number 2 of the Downtown Motel (that the room was within the vicinity of a school); (3) Sarah Dobbs from BCI is an expert in forensic analysis of controlled substances and scheduled drugs; (4) the authenticity of State's exhibit 32 which was a report from BCI. T. at 8-9. The stipulations were reduced to writing and filed with the trial court on August 9, 2019. [Docket Entry No. 58].

{¶63} Pursuant to R.C. 2901.22(B), "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." Further, "[a] person has knowledge of circumstances when he is aware that such circumstances probably exist." Id. "Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Huff,* 145 Ohio App.3d 555, 563, 763 N.E.2d 695(1st Dist. 2001). (Footnote omitted.) Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." *State v. McDaniel,* 2nd Dist. Montgomery No. 16221, 1998 WL 214606 (May 1, 1998), *citing State v. Elliott,* 104 Ohio App.3d 812, 663 N.E.2d 412(10th Dist. 1995). *See also, State v. Jones,* 56 Ohio St.2d 35, 38, 318 N.E.2d 637 ("The determination of whether appellant had the required culpable mental state must be made with a view to the totality of circumstances surrounding the beating of Otto Baum. As this court stated in paragraph four of the syllabus in *State v. Huffman* (1936), 131 Ohio St. 27, 1 N.E.2d 313: "The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the

direct testimony of a third person, and it need not be. It must be gathered from the surrounding facts and circumstances under proper instructions from the court.").

{¶64} In the case at bar, Lewis testified that when he requested a large amount of drugs to purchase, Wiggins got permission from Ramey to sell that amount. Ramey told Wiggins that Lewis could purchase two bags of methamphetamine for $150. Twice Ramey told Wiggins the deal was okay.

{¶65} Wiggins testified that they were Ramey's drugs and she was assisting him in selling them. Ramey gave her permission to sell both bags and watched her prepare and sell the drugs. This was by way of an affirmation nod. Ramey approved the purchase price of $150. Wiggins testified that she gave the $150 to Ramey. Wiggins testified that the gram of methamphetamine in her purse was given to her by Ramey for personal use.

{¶66} Ramey does not challenge the evidence related to preparation of the drugs for distribution. Ramey further does not challenge that the drug was methamphetamine, a schedule II drug, in the amount exceeding five times the bulk amount but less than fifty times the bulk amount, and that it was found in the vicinity of a school. Ramey's argument centers upon his contention that Wiggins, not Ramey was the actual seller of the drugs.

{¶67} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Ramey had committed the crime of Aggravated Trafficking of Drugs in violation of R.C. 2925.03(A)(2)(C)(1)(d). We hold, therefore, that the state met its burden of production regarding each element of the crime of Aggravated Trafficking of Drugs in violation of R.C. 2925.03(A)(2)(C)(1)(d) and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Ramey's conviction.

*Manifest weight of the evidence.*

{¶68}  As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient.  *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

> "[I]n determining whether the judgment below is manifestly against
> the weight of the evidence, every reasonable intendment and every
> reasonable presumption must be made in favor of the judgment and the
> finding of facts.
>
> * * *
>
> "If the evidence is susceptible of more than one construction, the
> reviewing court is bound to give it that interpretation which is consistent with
> the verdict and judgment, most favorable to sustaining the verdict and
> judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶69}  The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve.  *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the

appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer,* 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

{¶70} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

<u>ISSUE FOR APPEAL.</u>

*B. Whether the jury court clearly lost their way and created such a manifest* *miscarriage of justice that the conviction must be reversed and a new trial ordered.*

{¶71} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or

sufficiency of the evidence." *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell,* 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

{¶72} In the case at bar, the jury heard the witnesses and viewed the evidence. The jury saw the events as they transpired in real-time because the events were recorded on the body camera worn by Lewis and admitted into evidence during the trial. Further, the jury was able to observe both Lewis and Wiggins subject to cross-examination. In addition, the jury heard Ramey's arguments and explanations about his actions. Thus, a rational basis exists in the record for the jury's decision.

{¶73} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the foregoing and the entire record in this matter we find Ramey's conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears

to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Ramey's guilt. The jury neither lost their way nor created a miscarriage of justice in convicting Ramey of Aggravated Trafficking of Drugs in violation of R.C. 2925.03(A)(2)(C)(1)(d).

{¶74} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime for which Ramey was convicted.

{¶75} Ramey's Second Assignment of Error is overruled.

III.

{¶76} In accordance with R.C. 2953.08(A)(1), Ramey is entitled to appeal as of right the maximum sentence imposed on his conviction.

**Standard of Appellate Review.**

{¶77} We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016–Ohio–1002, 59 N.E.3d 1231, ¶22; *State v. Howell*, 5th Dist. Stark No. 2015CA00004, 2015-Ohio-4049, ¶31. R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. *See, also, State v. Bonnell*, 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.2d 659, ¶28.

{¶78} Accordingly, pursuant to *Marcum* this Court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that: (1) the

record does not support the trial court's findings under relevant statutes, or (2) the sentence is otherwise contrary to law.

{¶79} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118(1954), paragraph three of the syllabus. *See also, In re Adoption of Holcomb,* 18 Ohio St.3d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross*, 161 Ohio St. at 477 120 N.E.2d 118.

**ISSUE FOR APPEAL.**

*Whether the trial court properly imposed the maximum sentence in Ramey's case.*

**(1). R.C. 2929.11 and R.C. 2929.12 and Maximum Sentences.**

{¶80} A trial court's imposition of a maximum prison term for a felony conviction is not contrary to law as long as the sentence is within the statutory range for the offense, and the court considers both the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors set forth R.C. 2929.12. *State v. Keith*, 8th Dist. Cuyahoga Nos. 103413 and 103414, 2016–Ohio–5234, ¶ 10, 16; State *v. Taylor,* 5th Dist. Richland No. 17CA29, 2017-Ohio-8996, ¶16.

{¶81} R.C. 2929.11(A) governs the purposes and principles of felony sentencing and provides that a sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing, which are (1) to protect the public from future crime by the offender and others, and (2) to punish the offender using

the minimum sanctions that the court determines will accomplish those purposes. Further, the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes by similar offenders." R.C. 2929.11(B).

{¶82} R.C. 2929.12 sets forth the seriousness and recidivism factors for the sentencing court to consider in determining the most effective way to comply with the purposes and principles of sentencing set forth in R.C. 2929.11. R.C. 2929.12 is a guidance statute that sets forth the seriousness and recidivism criteria that a trial court "shall consider" in fashioning a felony sentence. Subsections (B) and (C) establish the factors indicating whether the offender's conduct is more serious or less serious than conduct normally constituting the offense. These factors include the physical or mental injury suffered by the victim due to the age of the victim; the physical, psychological, or economic harm suffered by the victim; whether the offender's relationship with the victim facilitated the offense; the defendant's prior criminal record; whether the defendant was under a court sanction at the time of the offense; whether the defendant shows any remorse; and any other relevant factors. R.C. 2929.12(B). The court must also consider any factors indicating the offender's conduct is less serious than conduct normally constituting the offense, including any mitigating factors. R.C. 2929.12(C). Subsections (D) and (E) contain the factors bearing on whether the offender is likely or not likely to commit future crimes.

{¶83} In *State v. Kalish*, 120 Ohio St.3d 23, 2008–Ohio–4912, 896 N.E.2d 124, the court discussed the effect of *State v. Foster,* 109 Ohio St.3d 1, 2006–Ohio–856, 845 N.E.2d 470 decision on felony sentencing. The court stated that in *Foster* the Court

severed the judicial-fact-finding portions of R.C. 2929.14, holding that "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *Kalish* at ¶ 1 and ¶ 11, *citing Foster* at ¶ 100, *See also, State v. Payne*, 114 Ohio St.3d 502, 2007–Ohio–4642, 873 N.E.2d 306; *State v. Firouzmandi*, 5th Dist. Licking No. 2006–CA–41, 2006–Ohio–5823.

{¶84} "Thus, a record after *Foster* may be silent as to the judicial findings that appellate courts were originally meant to review under 2953.08(G)(2)." *Kalish* at ¶ 12. However, although *Foster* eliminated mandatory judicial fact-finding, it left intact R.C. 2929.11 and 2929.12, and the trial court must still consider these statutes. *Kalish* at ¶ 13, *see also State v. Mathis,* 109 Ohio St.3d 54, 2006–Ohio–855, 846 N.E.2d 1; *State v. Firouzmandi* supra at ¶ 29. Thus, post-*Foster,* "there is no mandate for judicial fact-finding in the general guidance statutes. The court is merely to 'consider' the statutory factors." *Foster* at ¶ 42. *State v. Rutter*, 5th Dist. No. 2006–CA–0025, 2006–Ohio–4061; *State v. Delong,* 4th Dist. No. 05CA815, 2006–Ohio–2753 at ¶ 7–8.

{¶85} There is no requirement in R.C. 2929.12 that the trial court states on the record that it has considered the statutory criteria concerning seriousness and recidivism or even discussed them. *State v. Polick*, 101 Ohio App.3d 428, 431(4th Dist. 1995); *State v. Gant*, 7th Dist. No. 04 MA 252, 2006–Ohio–1469, at ¶ 60 (nothing in R.C. 2929.12 or the decisions of the Ohio Supreme Court imposes any duty on the trial court to set forth its findings), *citing State v. Cyrus*, 63 Ohio St.3d 164, 166, 586 N.E.2d 94(1992); *State v. Hughes*, 6th Dist. No. WD–05–024, 2005–Ohio–6405, ¶ 10 (trial court was not required to address each R.C. 2929.12 factor individually and make a finding as to whether it was

applicable in this case), *State v. Woods*, 5th Dist. No. 05 CA 46, 2006–Ohio–1342, ¶ 19 ("... R.C. 2929.12 does not require specific language or specific findings on the record in order to show that the trial court considered the applicable seriousness and recidivism factors") (citations omitted); *State v. Taylor,* 2017-Ohio-8996, ¶23.

{¶86} In this case, the trial court sentenced Ramey to a mandatory term of imprisonment for eleven years.  The trial court noted that in imposing a maximum sentence that the offense was the worst form of the offense.  Specifically, the trial court noted the amount of methamphetamine, the digital scales, and the prepared bags with weights written on them.  The trial court noted that Ramey was prepared to introduce a large amount of methamphetamine into the community at a rapid pace.  T. at 235-237. The court further noted Ramey had a prior felony conviction for trafficking in drugs out of Wayne County, Ohio and a prior theft conviction.  Id. at 236.  The trial court further noted that Ramey had a prior federal conviction for counterfeit United States currency and was wanted by federal authorities for probation or parole violations related to that offense.  T. at 234.

{¶87} Accordingly, the trial court considered the purposes and principles of sentencing [R.C. 2929.11] as well as the factors that the court must consider when determining an appropriate sentence.  [R.C. 2929.12].  The trial court has no obligation to state reasons to support its findings.  Nor is it required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry.

{¶88} Upon a thorough review, we find the record clearly and convincing supports the sentence imposed by the trial court.  We find the trial court properly considered the

purposes and principles of sentencing set forth in R.C. 2929.11, as well as the applicable factors set forth in R.C. 2929.12, along with all other relevant factors and circumstances. While Ramey may disagree with the weight given to these factors by the trial judge, Ramey's sentence was within the applicable statutory range and therefore, we have no basis for concluding that it is contrary to law.

{¶89}  Ramey's Third Assignment of Error is overruled.

{¶90}  The judgment of the Coshocton County Court of Common Pleas is affirmed.

By Gwin, J.,

Hoffman, P.J., and

Delaney, J., concur